## J. W. BREM v. LENA SWANDER, Appellant.

**Parent and child:** RIGHT TO CUSTODY: EVIDENCE. A father has the primary right to and should be given the custody of his minor children as against all persons except the mother, unless he has waived or forfeited that right, or is an unsuitable person. In this action the evidence is insufficient to shown that the father acquiesced in the guardianship of his minor children by a relative of his wife, from whom he was divorced and with whom the children were living prior to her death; or that he was an unsuitable person to be intrusted with their care.

**Courts:** PROBATE PROCEEDINGS: REVIEW ON APPEAL. A proceeding to revoke the guardianship of minors and award their care and custody to a parent is in probate, triable as an ordinary action and not *de novo* on appeal, and therefore the exclusion of evidence to which no proper exception was taken will not be reviewed.

**Same:** COURT FINDINGS: FORCE AND EFFECT. The findings of the trial court in probate proceedings are entitled to the force of a verdict of a jury, if substantially supported by the evidence.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

THURSDAY, OCTOBER 19, 1911.

PROCEEDING in probate, in which it was asked by plaintiff that letters of guardianship of his two minor children, which had been granted to defendant, should be revoked, and that the care and custody of said children be awarded to him. The court canceled the letters of guardianship as prayed, and ordered that letters be issued to plaintiff. The defendant appeals.—*Affirmed.*

*Seerley & Clark,* for appellant.

*Power & Power,* for appellee.

McCLAIN, J.—There is much conflict in the record as to the respective qualifications of plaintiff and defendant for guardianship of the children in question, but the following material facts are not in controversy: The plaintiff had been engaged in business in Burlington, at one time in partnership with his father-in-law, Mailandt; his business being that of a merchant tailor. Eight or nine years ago he· removed with his family, consisting of his wife and three children, to California, where he was not successful in business, and where his wife seems to have been discontented. They returned to Burlington, and. plaintiff resumed his business relations with Mailandt for about a year, and then returned to California, locating at San Diego, and leaving his wife and children with their relatives at Burlington. After about four months the wife went to California with the children and joined her husband, but she was still discontented, and after about six months, came back to Burlington. Before her departure from San Diego and in anticipation of his home being

broken up, and in order, as he says, that he might send his wife to a sanitarium, plaintiff tried to secure admission for the four children (another child having been born in the meantime) to a children's home, but he was able to secure such admission only for the two older. Thereupon, at the solicitation of his wife and her relatives, he sent her and the two younger children back to Burlington, where they lived with this defendant, a sister of the wife. Here the wife was in very poor health and died in December, 1909. But prior to that time this plaintiff had secured a divorce in California on the ground of desertion, and after the expiration of a year had remarried, and defendant had been appointed guardian of the two children in this state by the district court of Des Moines county. On the death of the wife, plaintiff appeared in the probate court in which the guardianship had been granted, and asked that the letters be canceled, and the custody of the children awarded to him.

It must be conceded that the father has a primary right to the guardianship of his minor children as against all persons save the mother; the right of father and mother in this respect being equal. Code, section 3192. Therefore the plaintiff should prevail in this case unless he is found to be an unsuitable person and the defendant a suitable person, so that the interests of the minors require that the natural and statutory right of the father should be disregarded. "There is no ground upon which the courts can interfere with the right thus recognized, except that of imperative necessity; that is to say, there can be no interference with the natural right of a parent except upon showing of gross misconduct, either willful or enforced, and in character such as to threaten serious and permanent detriment to the rights and interests of the child. No consideration such as the advantage of wealth, or social status, or even of personal affection, can of itself be sufficient. If the parent

*1 PARENT AND CHILD: right to custody: evidence.*

is a proper and competent person, and has not waived or forfeited his right, custody must be awarded to him." *Van Auken v. Wieman,* 128 Iowa, 476. And see to the same effect *Holmes v. Derrig,* 127 Iowa, 625; *Miller v. Miller,* 123 Iowa, 165. The conduct of a father, it is true, may be such as to amount to an abandonment or forfeiture of his primary right such as to justify the court in disregarding his claims. *Smidt v. Benenga,* 140 Iowa, 399; *Hadley v. Forrest,* 112 Iowa, 125; *McDonald v. Stitt,* 118 Iowa, 199; *Lally v. Fitz Henry,* 85 Iowa, 49.

But in this case there is no question of voluntary abandonment or forfeiture of parental rights. The plaintiff allowed his wife, with the two children, to return to Burlington on a visit to her relatives. He paid for their transportation, and made some provision for them by way of furnishing them with clothing. He wrote to the defendant about them, and sent them small sums of money. However inadequate may have been his contributions to their support, it must be remembered that they were absent from him at his wife's request and desire, and not at his own. The question is as to whether his failure to supply money for their return was involved in the proceeding for divorce on the ground of desertion, in which the wife was represented by counsel. There is no showing whatever that plaintiff ever held out to defendant the prospect that the children should remain permanently with her. Defendant assumed very soon an attitude of antagonism toward the plaintiff with reference to his wife and children. So long as the wife was living the plaintiff could not assert any paramount right of custody, and before the wife's death the appointment of defendant as guardian had been made. Immediately after the death of the wife, plaintiff instituted this action, asserting his right to their custody. Therefore at no time has defendant had any right to assume plaintiff's acquiescence in her permanent custody of the children.

The question to be decided, therefore, is simply this,

whether plaintiff is so far an unsuitable person for the
custody of these children that the court will set aside his
natural and statutory right, and, for the best interest of the
children, award their custody to the defendant.   As bear-
ing upon the alleged disqualification of the plaintiff, there
is evidence tending to show that while he lived in Burling-
ton, he was somewhat unduly given to the drinking of in-
toxicating liquors, and was sometimes intoxicated, and that
he treated his wife with harshness, and showed a continual
lack of affection for her, and that he was cross and irritable
with the children.   According to the testimony of the older
of the children whose custody is involved, the daughter,
Esther, twelve years of age  when examined, the lack of
affection towards the mother and the irritability toward the
children was also manifested in California, but she testi-
fied particularly as to relations existing during the first
residence in California, and as to a time when she was only
about seven years of age; and we think her testimony not
entitled to very great weight for reasons which fully ap-
pear in the record and have been discussed by counsel, but
which we do not feel it necessary to elaborate.   The father
and mother of the deceased wife, testifying for the de-
fendant, admit that plaintiff's relations with his children
were not characterized by any cruelty or hostility.   On the
other hand, it appears from the evidence that the plaintiff,
while in very straightened circumstances when he went to
San Diego, is now reasonably prosperous and financially
able to care for his children, that he lives respectably, and
that he and his present wife are maintaining a home in
which the children will be surrounded with good influences.

Much is said in argument for appellant in regard to
the circumstances attending the procurement by plaintiff
of a divorce, and it is contended that plaintiff had, prior
to the departure of his wife and these two children, en-
tered into illicit relations with the woman who has become
his present wife, that it was for this reason that his wife

desired to return to Iowa, and that the installation of this woman as housekeeper after his wife's departure, and his marriage to her as soon as the law would permit after the procurement of the divorce, characterize the plaintiff as an immoral person, unsuitable for the custody of these children. But there is no substantial evidence of improper relations between the plaintiff and the woman who subsequently became his wife either prior to the return of the first wife from California or between that time and the subsequent marriage after the divorce. There is some ground for surmise or suspicion if the testimony of the daughter Esther, in her direct examination, is to be accepted without qualification, but the circumstances referred to are such that she, as a girl of less than ten years of age when they occurred, might well have been mistaken in reference to their significance, and this is made plainly apparent from her testimony on cross-examination. We are quite inclined to the belief that this witness made the very natural mistake on the part of a child of her years of assuming things to be true as of her own knowledge about which she spoke only on information, which information itself was, in fact, based on nothing but inference. The real question is as to the present ability and fitness of the plaintiff to care for these children as father, and we would hardly be justified in overhauling his entire previous life for the purpose of seeing whether there was something discoverable which might give rise to a suspicion or even a belief that his conduct has not always been beyond proper censure. This is said particularly with reference to his conduct towards the mother of these children, which, as it seems to us, was censurable at least in lack of consideration and affection.

There was some testimony tending to show that the surroundings in which these children have been kept by the defendant have not been very suitable, and counsel for appellant devote the greater part of their argument to a vindication, based on the evidence, of the home of the

defendant as a place in which these children may properly and suitably be raised. On this question we have nothing to say, for it has not entered into our consideration of the result to be reached. We entertain no reasonable doubt as to the zeal and kindness of heart with which defendant has endeavored to discharge her self-assumed duty to these children. That they and their sisters who have continued to live with their father entertain a deep-seated affection for her as aunt, is apparent from the record. But we find nothing to indicate that, if these two children are restored to their father, they will not, within a reasonable time, be satisfied with their relations to him and his present wife. They have been separated from him for several years, and the separation had been under circumstances somewhat calculated to prejudice them against him. The youngest is now only six years of age, and therefore not old enough to have any deep-seated preferences. The girl, Esther, appears to entertain a prejudice against her father founded upon his treatment of her mother, which she may well abandon when she is established in his home. Under any circumstances, the affections of children for others than their parents are not sufficient in themselves to warrant the repudiation of the natural relationship of parent and child. It is of some significance, that as appears from the record, the two girls who have been kept with their father have been well raised, and are now in suitable surroundings in his home.

Counsel for appellant lay considerable stress on certain letters offered in evidence, written by these two girls to their sister and brother and their aunt in Burlington. These letters were not received in evidence, as the court, on the exceptions of the plaintiff, reached the conclusion that they were not competent evidence in the case. Without assigning these rulings as error or pointing out any error of law committed by the court in their exclusion, counsel for ap-

2 COURTS: probate proceedings: review on appeal.

pellant have printed them as part of the record, and relied upon them as they might have done in an equity case triable here *de novo* if the exclusion had been found to be erroneous; but, as we think they were properly excluded, we could not consider them even were the case before us in equity triable *de novo*. It is not, however, thus before us.

Proceedings in probate are triable as ordinary actions at law unless there is some special statutory provision to the contrary, and there is no such provision applicable to this case. It is only in equitable actions that a trial *de novo* is to be had on appeal to this court. See Code, section 3652. It is not, therefore, open to the appellant to have us consider evidence excluded by the lower court in the trial of the case. But, even were we in the situation to consider these letters, we should not deem them of controlling importance. If admissible, they would tend to show a desire on the part of the two girls in California, while their mother was still living, to visit their mother and sister in Burlington, which desire they were unable to gratify on account of the unwillingness of their father to give them the money necessary for the purpose. They also indicate some resentment towards their father on this account, and much sympathy with their mother as against him. But the testimony of the elder of these two girls, taken by deposition in California, counsel for the defendant being present and exercising their right of cross-examination, is quite contradictory to the general tenor of her letters, and it is quite significant that in the meantime she had in fact been allowed to visit her sister and brother in Burlington at defendant's house at her father's expense. In one of the letters the other sister complains that, while she is in school for the current year, she is to go to work after that, but it appears from the deposition that the girls were still both in school; the older one being about to graduate from the normal school. Taking all the situation into consideration, therefore, we are not at all im-

pressed with the force of the suggestion that, if these children are placed in the custody of the father, they will not be fairly treated and their interests properly cared for.

The suggestion already made that this case is not triable *de novo,* has further significance. The findings of the trial court are entitled to the force and effect of the

**3 SAME: court findings: force and effect.** verdict of a jury, and, if substantially supported by the evidence, we have no occasion to interfere with them. *Lally v. Fitz Henry,* 85 Iowa, 49; *McDonald v. Stilt,* 118 Iowa, 199; *Dankin v. Seifert,* 123 Iowa, 64; *Smidt v. Benenga,* 140 Iowa, 399. Even if this case were triable here *de novo,* we should, under a rule frequently announced, give considerable weight to the findings of the lower court so far as they are dependent upon the credibility of the witnesses testifying before it.

Under the record we find no occasion to interfere with the conclusions reached by the trial court, and its judgment is therefore *affirmed.*