MELVIN ERICKSON, Appellee, v. ESTATE OF MARTIN ERICKSON, Appellant.

**BASTARDS: General and Notorious Recognition.** Failure to deny
1 paternity when charged therewith does not constitute the recognition of paternity required by statute. (Sec. 3385, Code, 1897.)

**BASTARDS: Written Recognition—Stipulation for Judgment.** A stipu-
2 lation in bastardy proceedings, signed by the defendant, providing that judgment in a named amount shall be entered against the defendant, and "that neither the State nor the prosecuting witness

shall make any further claim or take any further proceedings against defendant on account of his alleged paternity,'' does not constitute a *"written"* recognition by defendant that he is the father of the child in question. (Sec. 3385, Code, 1897.)

**APPEAL AND ERROR:** Affirmance on Point Raised by Court. The appellate court is at liberty to recognize *on its own motion* a record ground for affirmance of the lower court.

**BASTARDS:** Stipulated Judgment as Proof of Paternity. Judgments in bastardy proceedings against defendant for a specified amount carry, *in the absence of any contrary showing*, a conclusive implication that defendant is the father of the child in question, even though there be no express recitals, either in the judgment or in the stipulation therefor, of paternity. (Sec. 5635, Code, 1897.)

SALINGER and STEVENS, JJ., dissent.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

DECEMBER 31, 1920.

REHEARING DENIED OCTOBER 1, 1921.

PROCEEDING to establish plaintiff's right to inherit, as heir of Martin Erickson, deceased. Relief was awarded as prayed. The administrator of the estate and guardian of the estate of a minor heir appeal.—*Affirmed.*

*William S. Hart* and *H. E. Taylor,* for appellant.

*Murphy & Gleason,* for appellee.

LADD, J.—The plaintiff was born April 15, 1896. His mother was unmarried, and at the time resided in Allamakee County, near the home of Martin Erickson. For a considerable time, and until shortly before plaintiff's birth, she was housekeeper for Martin Erickson. Some time in December, 1895, she caused a bastardy complaint to be filed, alleging that she was pregnant with a child of which Martin Erickson was the father. The cause was assigned for trial at the September, 1896, term of the district court, but was disposed of by stipulation and judgment thereon, after a plea of not guilty had been interposed. The plaintiff rests his claim to heirship, aside from the proof of

paternity, upon evidence bringing him within the conditions of Section 3385 of the Code:

"They [illegitimates] shall inherit from the father when the paternity is proven during his life, or they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing. Under such circumstances, if the recognition has been mutual, the father may inherit from his illegitimate children."

I.    It appears that Helen Johnson was employed in the home of the decedent in the summer of 1895, during which time she became pregnant with plaintiff, and she testified that he was begotten by decedent. This was not disputed, and the rumors current did not extend beyond this fact. Olson testified to having accompanied his wife and Helen Johnson to see decedent in the fall of that year, and that, upon being charged with paternity of her unborn child, he neither admitted nor denied, but remained silent; that he acted in like manner on another occasion; and that, when a letter was brought to decedent from parties in Minnesota, accusing him of such parentage, his only response was, "That is a hell of a note." This witness lived about a half mile from decedent for 23 or 24 years, and had not heard decedent speak of the child. Ola Rema had been subpœnaed at the trial, and testified that he asked decedent what he wanted, and was answered, and related that "he wanted to see if he couldn't prove that she wasn't just in her right mind, feeble-minded like;" and that decedent, being told that the witness "thought that would go against him considerable, if he went to prove that," and that "it was going to go against him," answered, after some delay, that "it might;" that decedent, when accused of being the father of the child, didn't deny it. Helen Johnson corroborated Olson's testimony as to their interview with decedent, and swore that she had never heard decedent deny paternity of plaintiff, though he had objected to the baptism of the child with his name. He appears also to have interposed a like objection. The clergyman officiating swore that decedent objected on the ground that he was not father of the child, but, though told that his name would not be used, if he filed affidavit denying paternity of the child, compliance was intimated, and no affidavit was filed; and that

1. BASTARDS: general and notorious recognition.

his name was entered in the church record as the child's father. Aside from decedent's denial of paternity in circumstances as recited, the record was without evidence of denial, save as related by Larson, who said that he urged decedent to settle, when informed that "they wanted $500," and that decedent remarked that "he considered it a large sum of money," and that "he was not guilty, and did not like to pay it." The witness appears to have urged settlement on the ground that it would be cheaper, and would avoid ridicule and further disgrace.

The mere recital of the record disposes of the contention that there was such recognition by decedent of his paternity as is contemplated by the statute quoted. See *Murphy v. Murphy*,

2. BASTARDS: written recognition: stipulation for judgment.

146 Iowa 255; *Tout v. Woodin*, 157 Iowa 518; *Hays v. Claypool*, 164 Iowa 297; *Watson v. Richardson*, 110 Iowa 673; *McCorkendale v. McCorkendale*, 111 Iowa 314; *Brisbin v. Huntington*, 128 Iowa 166; *McNeill v. McNeill*, 166 Iowa 680; *Johnson v. Moore*, 184 Iowa 648; *Duffy v. Duffy*, 114 Iowa 581; *Trier v. Singmaster*, 184 Iowa 307. Nor is there ground for finding that there was recognition in writing. As the case was about to be called for trial, the following stipulation, signed by Martin Erickson, Helen Johnson, her attorney, and the county attorney, was filed in the office of the clerk:

"Martin Erickson v. State of Iowa: Stipulation.

"It is hereby stipulated that the above-entitled cause is, by and between the parties hereto, and with the assent of Helen Johnson, the prosecuting witness, settled on the following terms: Judgment to be rendered against defendant for $300, payable as follows, to wit: $100 within 30 days from this date; $50 within 4 months from this date; $50 within 10 months from this date; $50 within 16 months from this date; $50 within 22 months from this date,—with interest at the rate of 6 per cent per annum. Judgment to be entered as per this stipulation, and the above amounts to be paid into this court; and that the state or the prosecuting witness make no further claim or take no further proceedings against defendant on account of his alleged paternity of the bastard child of the said Helen Johnson. Dated September 18, 1896."

On the same day, judgment was entered as follows:

"Now, on this day, to wit, September 18, 1896, the same being the 5th day of the regular September term, this cause coming on for hearing, E. M. Woodard and M. B. Hendrick appearing for the plaintiff, and Stilwell & Stewart appearing for the defendant. It is hereby ordered and adjudged by the court that judgment be entered as per stipulation. * * *"

The only reference in the stipulation to the paternity of the child is in the part thereof wherein prosecuting witness agrees "to make no further claim or take no further proceedings against defendant on account of his alleged paternity of the bastard child of the said Helen Johnson;" but it is vigorously argued by counsel for appellee that such recognition is implied therefrom, and that, when taken in connection with the further fact that deceased consented to have judgment entered against him, it is sufficient to justify the holding of the court below. The writing alone does not recognize decedent's paternity, and even if, when construed in connection with his implied oral consent to judgment, it amounted to such recognition, this could hardly be said to be recognition in writing. At most, it would seem only partly in writing, and this would not meet the requirements of the statute.

It does not follow, however, that his paternity of plaintiff was not proven during the lifetime of decedent. This point is not raised on appeal, but is appropriate for our consideration, in support of the ruling of the trial court. Parties may not, by ignoring in their briefs a tenable ground for approving the trial court's decision, either purposely or through oversight, have the case, if such ground be discovered here, reversed here. Fairness to the trial court exacts this much, to say nothing of the rights of litigants.

3. APPEAL AND ERROR: affirmance on point raised by court.

The record discloses that decedent was proven, in the bastardy proceedings, the father of plaintiff. Section 5629 et seq. of the Code defines the procedure for adjudicating the paternity of an illegitimate child, and the judgment to be entered. Section 5635 of the Code provides that: "If the accused be found guilty, he shall be charged with the maintenance of the child in

4. BASTARDS: stipulated judgment as proof of paternity.

such sum or sums, and in such manner, as the court shall direct, and with the costs of the action.''

Under the section following, such sums may, on notice, be increased or diminished, or the judgment vacated. Section 5636 of the Code.

It will be observed that only on finding of guilt is judgment authorized, and then only for the maintenance of the child. Though the public is interested in the action, the right of the mother, if she has attained her majority, with the approval of the county attorney to settle with the accused, is recognized by numerous decisions. *Black Hawk County v. Cotter,* 32 Iowa 125; *State v. Noble,* 70 Iowa 174; *State v. Meier,* 140 Iowa 540; *State v. Baker,* 89 Iowa 188. All settled in any of these cases was the amount to be paid the mother of the illegitimate, upon the dismissal of the proceedings; and in none was judgment entered. Here, the agreement required judgment to be rendered against defendant for $300, to be satisfied in payments; and, as the statute contemplated judgment only in event of guilt, and for the child's maintenance, admission of the paternity of the child, in the absence of anything indicating the contrary, is clearly to be implied therefrom. On no other theory would such an entry be likely to be made. The judgment was on settlement,— but of what? Surely, it was not of his paternity; for that is not alluded to in the stipulation. Of course, it must have been conceded, hypothetically at least, in settling; but, in the absence of anything to indicate that the admission was so intended, or that the judgment was being entered for the support of the child on any other theory than because of his being its father, we think the inference of such parentage is to be drawn. The agreement required judgment to be ''rendered against defendant for $300,'' payable in payments. The judgment was to be, and was, entered precisely as though this were done on finding of guilt, and for his own child's maintenance. The settlement was of the amounts to be paid, and when, and nothing else, save that the judgment should be final. No restriction of the implication of guilt is to be found in the stipulation, nor does any appear in the judgment record; and, as the function of such a judgment is to exact from the defendant the support of his child, there is enough in its entry by consent, in the absence of anything to the

contrary, to warrant the implication that the child had been shown or admitted to be his own. In what manner paternity is to be proven is not specified in the statute cited. It is quite enough, if shown by the testimony of prosecutrix or by other proof, as by inference from facts shown, or admissions, or by implication to be drawn from consent to the entry of judgment; and, in any such event, the entry of judgment, in the absence of any restriction, is conclusive evidence that the paternity has in some way been proven. *McKellar v. Harkins,* 183 Iowa 1030. The evidence of the conversations had at the time does not broaden the stipulation, and in no way limits or qualifies the concession to be implied from the entry of judgment. The record does not suggest controversy or adjustment as to paternity, but of the amount to be paid; and therefore, as to this, there is no basis for the contention that decedent, as to his liability, was merely buying his peace. The court rightly ruled that plaintiff was proven decedent's heir during his lifetime, and its judgment is—*Affirmed.*

WEAVER, C. J., EVANS, PRESTON, and ARTHUR, JJ., concur.

STEVENS, J. (dissenting). I concur in the foregoing opinion of the majority, except in so far as it is therein held that the paternity of plaintiff was adjudicated during the lifetime of Martin Erickson by the judgment entered against him upon the stipulation in a bastardy proceeding. The opinion of the majority clearly and emphatically recognizes that Martin Erickson did not, in the stipulation referred to, which was signed by him and by Helen Johnson and approved by the county attorney, admit the paternity of plaintiff; and that a money judgment, entered without other proof than the stipulation, would not operate as an adjudication of such paternity. This is true because the statute establishes a right of inheritance when the paternity is proven during the lifetime of the putative father. To supply the missing link, resort is had by the majority to the theory of hypothetical concession of guilt, and implied oral consent to judgment necessarily amounting to a confession of guilt. By reference to the stipulation and the judgment record, both of which are copied in full in the majority opinion, it will be observed that the judgment entered was based upon and was in pur-

suance of the stipulation signed by the parties. It is a matter of common knowledge that courts never exact proof in aid of a stipulation sufficient in itself for judgment, signed by parties capable of contracting. Any inference from the record or implication of oral consent to judgment, or of hypothetical concessions of guilt, is, in my judgment, in defiance of the plain language both of the stipulation and the judgment entry. The adjudication of a judgment based upon a stipulation is no broader than the stipulation, and adds nothing thereto. As appears therein, the majority find that the stipulation is not sufficient, under Section 3385 of the Code, to establish recognition in writing, and necessarily that a judgment based solely thereon would not adjudicate the question of paternity.

In one sentence of the opinion, emphasis is given to the statute which authorizes a judgment for the support of the bastard child, only upon a finding of guilt; and in another it is implied that reservations in a stipulation for a money judgment might be recognized, and that a judgment under such circumstances would not necessarily be conclusive against the defendant. If the stipulation in question is, in itself, insufficient to meet the requirement in the statute of an admission in writing, then it is immaterial that it is without reservations or restrictions. This, however, the majority, by resorting to hypothetical concessions, implied oral consent, and admissions, or the introduction of proof other than the stipulation, fully recognize. If the record discloses anything, it is that Martin Erickson never, at any time or place, or under any circumstances, or to any person, admitted that he was the father of plaintiff; but that, on the contrary, he always denied the charges against him, except upon the one occasion referred to in the majority opinion, when he remained silent.

Further, it appears conclusively from the evidence that Erickson agreed to pay $300 in installments, and that a judgment might be entered against him upon the condition that no further claim would be made against him by the state or by Helen Johnson. The amount agreed upon does not purport to have been intended for the support of the bastard child, nor does the stipulation or judgment so recite or provide. Manifestly, the defendant in that proceeding sought to buy his peace, and

escape further annoyance and disgrace that must result from the further pursuit by Helen Johnson. Compromises are favored, and justly so. Under the holding of the majority, a defendant in a bastardy proceeding is deprived absolutely of the right to compromise or make settlement and buy his peace and have the matter concluded by a judgment, without being conclusively charged with the paternity of the alleged illegitimate child.

The record, taken as a whole, in my opinion, conclusively shows that Erickson sought only to escape the further annoyance and pursuit by Helen Johnson, and that nothing was further from his intention than to admit the paternity of the child, or to consent to the entry of a judgment having that effect. A. C. Larson, who was at the time county attorney of Allamakee County, testified regarding the settlement and a conversation had by him with Erickson after the case had been called for trial, and immediately before the stipulation was filed, as follows:

"I have lived in Waukon since 1891. I was county treasurer in 1896. I knew Martin Erickson at the time the bastardy proceeding was called in court against him, about September, 1896, and saw him here then. I remember the time he made a stipulation of settlement in this case, and talked to him about the case, just before the stipulation was made. Q. What did he say to you, and what did you say to him? A. Well, I plead with him to make a settlement. He said they wanted $500. I think it was $500,—he considered it a large sum of money. He said he was not guilty, and did not like to pay it. I plead with him to pay it, and not allow it to go on. Q. What did he say to you after that? A. After I plead with him for a while, he concluded to make a settlement. Q. You may state whether or not there was any talk to the effect about it being cheaper to settle than to fight the case. A. Yes, that is what I plead with him. I said, 'It is cheaper to settle, and not so much of a disgrace.' I said: 'If they got you on the stand with that crippled girl up there you would wish you had paid $1,000 rather than to go up there and be ridiculed like you will be.' Q. But did Martin Erickson ever admit to you that he was the father of the child? A. No, sir. Q. What did he say about that? A. Well, he plead innocence."

I see no reason why full faith and credit should not be given to the judgment record; and if this is done, the conclusion must be that no proof of any kind was introduced, but that judgment was entered solely upon the stipulation which is copied into and made a part of the judgment entry. There is no room in this case for the theory of hypothetical concessions, implied oral consent, or admission of guilt, or that proof other than the stipulation was introduced. In my opinion, the judgment should be held to have settled only what was involved in the stipulation: namely, the payment of $300 in compromise, and to escape further annoyance, disgrace, and pursuit on the part of Helen Johnson.

Of course, I do not want to be understood as expressing an opinion as to whether Martin Erickson was, in fact, the father of plaintiff. That question is not involved.

The court, in *McKellar v. Harkins*, 183 Iowa 1030, went no further than to hold that a judgment in a bastardy proceeding, entered upon the verdict of a jury finding that the defendant was the father of the illegitimate child, was such an adjudication as is contemplated by the statute. This case affords no support to the conclusion of the majority.

I would reverse. I am authorized to say that Mr. Justice Salinger joins in this dissent.