IN RE ESTATE OF FRANK V. DEVINE, deceased.

FRANCIS FREDERICK HARRIS, appellant, v. JOHN DEVINE and BERNARD DEVINE, administrators, appellees.

No. 51067.

(Reported in 123 N.W.2d 898)

OCTOBER 15, 1963.

Franklin Jaqua and John P. Mansfield, both of Humboldt, for appellant.

Linnan, Lynch & Straub, of Algona, for appellees.

LARSON, J.—Frank V. Devine, age 67 and single, died intes-

tate August 25, 1962. His brothers, John Devine and Bernard Devine, were promptly appointed administrators of his estate. On September 17, 1962, Francis Frederick Harris filed a verified application asking that he be adjudged the natural son and sole heir of decedent, and that the administrators be removed and a new one appointed. The administrators resisted the application and the case was tried before the court without a jury and judgment was rendered denying applicant relief, for the reason that he failed to prove that he was the decedent's son "as required by statute and the law of this State." The principal questions presented by this appeal are whether paternity was proven during the lifetime of decedent, whether applicant was recognized as decedent's son in writing, or whether he was generally and notoriously recognized as his son. Section 636.46, Code, 1962.

I. Upon one matter there is no dispute, i.e., that the case was triable by ordinary proceedings. It presents an issue in the nature of, although not technically constituting, a claim against the estate on the hearing of which "all provisions of law applicable to an ordinary action shall apply." Section 635.59, Code, 1962. It is the Iowa rule that all proceedings in probate are triable as ordinary actions unless there is some special statutory provision to the contrary. In re Estate of Wulf, 242 Iowa 1012, 1016, 48 N.W.2d 890, 33 A. L. R.2d 698; Brem v. Swander, 153 Iowa 669, 676, 132 N.W. 829. Also see sections 611.3, 611.4 and 611.6, Code, 1962. Being aware of the fact that our review of this matter is not de novo, applicant concedes under the record the determination of the trial court that he failed to prove general and notorious recognition of paternity is binding upon this court, for there was substantial evidence to support such a finding. Applicant contends, however, there was reversible error in the court's ruling on objections to both the admission and rejection of testimony pertaining thereto, and for that reason he is entitled to a new trial. While there may be merit in that contention, we find it unnecessary to consider it here in view of our conclusion upon the primary question of whether during the lifetime of the decedent it was proven that applicant was his illegitimate son.

II. The relative facts are not in serious dispute, but the

inferences and conclusions to be drawn from some of them are in conflict. As to the primary issue the contest is argumentative, and in the main pertains to questions of law. McKellar v. Harkins, 183 Iowa 1030, 1033, 166 N.W. 1061. This is particularly true as to the question of whether applicant's Exhibit "C" is ample proof of decedent's paternity, and is to be considered an adjudication of paternity during decedent's lifetime.

Perhaps a short statement of the facts revealed by the record would be helpful at this point. Applicant is the son of Bernice Harris and was born on April 9, 1937, at Livermore, Iowa. When she was 18 years of age and had graduated from high school she became a domestic servant in the farm home of decedent's parents and held that position from the spring of 1932 until about Christmastime 1936. Decedent Frank V. Devine, a single man about 37 years of age, also resided in his parents' farm home during this period. Decedent and Miss Harris, applicant's mother, occupied adjoining upstairs bedrooms, while decedent's parents slept downstairs. Applicant's mother testified that the decedent had sexual relations with her over the four-year period of her employment in the Devine home, that he would come to her room at night, and that she did not have intercourse with any other man during that period. She stated she became pregnant with applicant in the summer or fall of 1936 and advised the testator Frank V. Devine of the fact some six months before her son was born. She testified Frank admitted it was his child, but he told her he could not marry her at that time because he had too many family obligations with his parents. She did not tell anyone else of her condition until she returned to her home to stay. Then she told her father that Frank was responsible. Apparently her father, armed with a shotgun, sought Frank Devine in an effort to persuade him to marry his daughter Bernice. Although the evidence concerning his visit at the farm home was challenged as hearsay, the trial court found the father had gone to the farm armed and, as a result, landed in jail at Livermore.

It further appeared that decedent and his father on that same day went to the County Attorney's office at Humboldt, Iowa, where an instrument entitled "Compromise and Agree-

ment" was drawn and executed by the decedent. It provided as follows:

"THIS CONTRACT and AGREEMENT Made and Entered into on this 20th day of January, 1937, by and between BERNICE HARRIS of Livermore, Humboldt County, Iowa, party of the First Part, and FRANK V. DEVINE of Livermore, Humboldt County, Iowa, party of the Second Part, WITNESSETH:

"That WHEREAS Bernice Harris is pregnant and expects to give birth to a child within three or four months and whereas the said Bernice Harris alleges that Frank V. Devine is the father of the said unborn child:

"It is hereby understood and agreed that the said Frank V. Devine shall pay the sum of $200 in full and complete settlement for the support and provision of the child to be born to Bernice Harris.

"It is further understood and agreed that this compromise and agreement shall be valid and binding upon the parties only in the event that the same is approved by a judge of the District Court in and for Humboldt County, Iowa."

Later that day the county attorney and sheriff paid a visit to Miss Harris. They presented her with the instrument, already signed by Frank Devine, and asked her to sign it. She said she had not discussed the matter with anyone and, when she was told if she would sign it, her "father would get out of jail", she signed. She said: "I had to have something. I was a poor girl. I had nothing. I had to have baby clothes and I had to have a doctor bill."

The county officials had her sign the papers in duplicate, and then returned to Humboldt where decedent and his father were waiting. Two days later on January 22, 1937, the "Compromise and Agreement" was approved by a Judge of the Fourteenth Judicial District, and Barney Devine, decedent's father, called on Miss Harris and paid her the $200 in cash. This instrument, with the court's approval attached, was introduced herein without objection as Exhibit "C", and it is the effect and significance of this exhibit we must first consider.

The trial court concluded that, although it was "a judicially approved settlement under authority of section 675.5, Code of

Iowa", it "does not constitute a judicial decree for support as contemplated by said section." We cannot agree.

Chapter 675 of the Code relates to the paternity of children and obligation of parents thereto. Section 675.1 provides for the obligation of parents, stating that parents of a child born out of wedlock owe the child necessary maintenance, education and support. It provides: "The father is also liable to pay the expense of the mother's pregnancy and confinement."

Section 675.5 provides: "The obligation of the father * * * is discharged by complying with a judicial decree for support or *with the terms of a judicially approved settlement.*" (Emphasis supplied.)

Section 675.30 relates to agreements or compromises and provides: "An agreement or compromise made by the mother or child * * * with the father concerning the support of the child shall be binding upon the mother and child only when adequate provision is fully secured by payment or otherwise and when approved by a court having jurisdiction to compel support of the child. The performance of the *agreement or compromise*, when so approved, shall bar other remedies of the mother or child for the support of the child." (Emphasis supplied.)

That Exhibit "C" was procured by decedent after consultation with the county attorney is abundantly clear. We do not know what Frank Devine told the county attorney, but it is quite evident from the wording of the instrument he drew and the procedure he used that he intended that it resolve the paternity problem. It was not drawn as a compromise of a disputed charge by Miss Harris in that regard, as one might expect if it was intended merely to buy his peace. The instrument recites the charge and purports to settle Frank's liability for the child's support. It does not deny his alleged paternity. Miss Harris had not consulted an attorney and was unaware that the instrument was being drafted, or of its terms, prior to the time it was presented to her for her signature. Obviously it was the method decedent, then 41 years of age, chose to use to avoid proceedings in court to determine his liability. It seems clear that, after being legally advised, he took advantage of this procedure which was provided by the legislature, to avoid unpleasant litigation

such as that involved in a bastardy proceeding. He chose this manner of settling his liability "for the support and provision of the child to be born to Bernice Harris", as stated in the agreement. Although under these circumstances we need not pass upon the importance of a denial in the agreement, we note that decedent did not deny the charge made by Miss Harris therein. We are not now considering the instrument as a recognition in writing.

■ III. The provisions of what is now chapter 675 of the 1962 Code were enacted by the General Assembly in 1925 as chapter 81, Laws of the Forty-first General Assembly. It was entitled "AN ACT to repeal sections twelve thousand six hundred fifty-eight (12658) to twelve thousand six hundred sixty-seven (12667), both inclusive, Code, 1924, relating to children born out of wedlock and to enact a substitute therefor, being an act with reference to *proceedings to establish paternity.*" (Emphasis supplied.)

Prior to its passage the bill known as S. F. 134 was amended "by striking out the period at the end of the title, changing same to a comma and adding thereto : 'being an act with reference to proceedings to establish paternity.' "

■ It therefore must be quite clear the legislature intended that this procedure be used as an inoffensive method for the *establishment of paternity* and the fixing of liability for the child's care and support. Thus, the contention of appellees that one can escape liability for full support of a child alleged to be his by taking advantage of the benefits set forth in sections 675.5 and 675.30 and escape the effect of paternal establishment by an assertion that the approved agreement and compromise did not amount to an admission of his paternity seems unsound, to say the least. One cannot usually have his cake and eat it too, and so when decedent executed this agreement and compromise and had it approved by the court, he and his estate obtained the con-templated protection from further liability to the mother and child for support. We think it did more and amounted to his consent to a judicial determination that he was the father of applicant as certain as if the court had specifically found him so to be. Thus the evidence, Exhibit "C", executed under these

undisputed circumstances, was quite sufficient to meet the first alternative of section 636.46 whereby the paternity must be proven during decedent's life, to establish the child's right to inherit from the father.

IV. It is unnecessary for the court, in approving a compromise and agreement under chapter 675, to specifically find a signer is the father of the unborn child. The execution of the agreement and the subsequent performance thereof, as provided in section 675.5, clearly implied that determination.

The record in a bastardy proceeding, including the verdict and judgment, has been held available to prove the paternity of a child under our statute, now section 636.46. McKellar v. Harkins, supra, 183 Iowa 1030, 1036, 166 N.W. 1061, 1063. Although there the judgment entry did not specifically declare the paternity, the court declared it not "essential to the validity of the judgment that it should have contained a recital of the verdict, or of the fact of defendant's guilt." It declared "the finding of guilt was essential to the entering of any judgment whatever against the defendant."

So here we hold it immaterial that the agreement approved by the court did not recite a finding that decedent was the father of the unborn child. It was not essential. The election to proceed under chapter 675 by the parties was sufficient to establish decedent's paternity. By the words the court used in the approval it is clear that it intended this to be a judicially approved settlement under section 675.5, and that when decedent complied therewith it constituted due proof of paternity during decedent's life.

V. Appellees cite and rely strongly upon the case of Erickson v. Estate of Erickson, 191 Iowa 1393, 1396, 180 N.W. 664, but it appears to be more helpful to appellant unless we follow the view of the dissent, which we do not. In the Erickson case there was a bastardy proceeding pending at the time a stipulation for settlement was made. Defendant had pleaded not guilty. He contended, in effect, the settlement agreement amounted to a dismissal of the charge against him. It stated " 'that the state or the prosecuting witness make no further claim or take no further proceedings against defendant on account of his alleged pater-

nity of the bastard child of the said Helen Johnson.'" Judgment was then rendered in favor of Helen Johnson in the sum of $300 per stipulation.

Appellee's counsel argued recognition was implied by settlement, and that when taken in connection with the further fact that deceased consented to have judgment entered against him, it was sufficient to justify the holding of the court below. Appellant contended that only on a finding of guilt is judgment authorized in such proceedings, and then only for the maintenance of the child, and that, although the public interest is involved, a mother who had attained her majority, with the approval of the county attorney, may settle with the accused and have the proceedings dismissed, citing several cases wherein judgment as to paternity was not rendered.

It is interesting to note, however, in the Erickson case the court, in a 5 to 2 decision, held for the claimant, saying at page 1398 of 191 Iowa: "Here, the agreement required judgment to be rendered against defendant for $300, to be satisfied in payments; and, as the statute contemplated judgment only in event of guilt, and for the child's maintenance, admission of the paternity of the child, in the absence of anything indicating the contrary, is clearly to be implied therefrom. On no other theory would such an entry be likely to be made." The court pointed out there were no restrictions of the implication of guilt found in the stipulation nor in the judgment, and, since the function of such a judgment is to exact from the defendant the support of his child, there is enough in its entry by consent to warrant the implication that the child had been shown to be his own.

The court there dealt with the problem as to the manner paternity is to be proven, and recognized that it is not specified in the statute. However, it came to the conclusion that "it is quite enough, if shown by the testimony of prosecutrix or by other proof, as by inference from facts shown, or admissions, or by implication to be drawn from consent to the entry of judgment", citing McKellar v. Harkins, 183 Iowa 1030, 166 N.W. 1061.

Furthermore, in the Erickson case the court found no basis for the contention that decedent was merely buying his peace.

Here the same contention must also be rejected. Except for the testimony of a sister-in-law of decedent that Mr. Harris threatened decedent on the day he learned of his daughter's condition, the record discloses no harassment of decedent by Miss Harris or her family, but on the contrary shows decedent and his father were the ones who put pressure on Miss Harris to get the support issue settled as quickly and quietly as possible. Quite naturally she would want to get her father released from jail.

We are not to be understood as saying there is no way to compromise and settle a dispute between the parties as to whether the accused is or is not the father of an illegitimate child. What we do say here is that there is nothing we can find in Exhibit "C" which even infers Miss Harris was compromising a disputed claim of paternity. The record is clear that to her there had never been a denial of this claim, and since the proceedings chosen and followed were those to compromise the decedent's legal responsibility for the support of the child, it is difficult to believe this instrument, which clearly was drawn and submitted as authorized in chapter 675, was in reality a compromise of a paternity claim. But whether it was or was not so intended by decedent, by its terms and the procedure followed as a matter of law we hold the decedent consented to a determination of his paternity, settled his obligation for support, and satisfied the requirement of section 636.46 that paternity be proven during his lifetime.

This is not an unjust or unreasonable construction to place upon these statutes, for, as has been pointed out several times in the past, the father so recognized can by will leave to this child as little or as much as he desires. Here it may be presumed, in the absence of a will, he desired all his property to go to his son rather than to collateral heirs, including the administrators John and Bernard Devine.

Much of the record and briefs and arguments filed herein relates to the question of whether decedent during his lifetime recognized applicant as his son in writing. It poses an interesting question, but in view of our conclusion above we need not determine it here.

VI. In view of our conclusion that applicant has proven he

is the natural son and only child of Frank V. Devine, deceased, his prayer for the removal of the present administrators must be granted, and the party nominated by him as administrator, if found qualified, should be named to that office. For judgment in accordance with these views the matter is remanded.—Reversed and remanded.

All JUSTICES concur.