**WORLD TEACHER SEMINAR,
INC., Plaintiff,**

v.

**IOWA DISTRICT COURT FOR
JEFFERSON COUNTY,**
Defendant.

No. 85–1287.

Supreme Court of Iowa.

May 13, 1987.

Rehearing Denied June 12, 1987.

**174**

Edwin F. Kelly, Ron W. Kelly and John A. Morrissey of Kelly & Morrissey, Fairfield, for plaintiff.

Dwight W. James and Dennis P. Ogden of James & Galligan, P.C., Des Moines, for defendant.

CARTER, Justice.

The plaintiff, World Teacher Seminar, Inc., brings this original certiorari action to challenge an order requiring it to indemnify Maharishi International University for attorney fees of $62,090 allegedly incurred in curbing violations by plaintiff of a consent decree entered in prior litigation between the parties.

Plaintiff is an Iowa corporation which previously brought an action against Maharishi International University and others affiliated with the transcendental meditation movement claiming damages and injunctive relief for alleged restrictions imposed against plaintiff's teaching practices. Plaintiff's president and chief executive officer, Robin Woodsworth Carlsen, was also a plaintiff in that action. That lawsuit was expanded when nine students of Maharishi International University intervened seeking relief from the University's efforts to expel them for their contacts with plaintiff. Maharishi International University counterclaimed against plaintiff seeking injunctive relief against its activities on the campus of the University in Fairfield, Iowa.

In July 1983, the parties to that litigation agreed to a procedure for resolving it by consent decree. This proposal contemplated the submission of four questions to the Maharishi Mahesh Yogi (the Maharishi) concerning the bona fides of plaintiff's activities within the transcendental meditation movement. Depending on the Maharishi's answers to these questions, the parties agreed to a form of consent judgment and order of permanent injunctive relief. If the Maharishi's answers were favorable to plaintiff's interests, one form of consent decree was to be entered, and if the answers were favorable to the interest of Maharishi International University, a different form of consent decree was to be entered.

The stipulation for consent decree provided that the Iowa District Court for Jefferson County was to listen to a tape recording of the Maharishi's answers and determine which group of litigating parties the Maharishi's answers favored. This stipulated procedure for consent decree was approved by the court, and in July 1983, the court, upon listening to the Maharishi's taped response to the four questions, determined that the answers disfavored the bona fides of plaintiff's activities within the transcendental meditation movement. As a result of that determination, the court, on July 16, 1983, approved and signed that form of consent decree which favored Maharishi International University. That decree enjoined plaintiff and Carlsen from entering the campus of Maharishi International University in Fairfield or engaging in acts which would foreseeably interfere with the functioning of the University's activities and programs. The decree further provided as follows:

In the event of any action to enforce this agreement or for breach of this agreement by any of the parties, the

unsuccessful party or parties agree to indemnify and hold harmless the other parties against any loss, damage, or expense including reasonable attorneys' fees which may be sustained by reason of this breach or sustained as a result of having to enforce the stipulation or this judgment. The parties are entitled to bring an action for specific performance, damages at law or in equity....

All parties to this agreement and the related lawsuit ... agree and consent to the personal jurisdiction of the courts of the State of Iowa in any and all future disputes between and among them and shall only commence and maintain such lawsuits in courts of the State of Iowa, and only in the Jefferson County District Court of that State.

The consent decree was filed with the clerk of the Iowa District Court for Jefferson County and shown on the clerk's docket. The decree was then withdrawn from the court file and not formally entered in the record book. Such withdrawal was pursuant to a stipulation entered into by the parties and approved by the court. That stipulation provided that the decree could be returned to the court file and formally entered of record if it became necessary to seek its enforcement by judicial process.

On November 17, 1983, in contemplation of initiating contempt proceedings against plaintiff for alleged violations of the injunctive provisions of the decree, attorneys for Maharishi International University caused the consent judgment to be returned to the clerk of the district court for filing and entry of record. Plaintiff and Carlsen responded by filing a petition under Iowa Rule of Civil Procedure 252 to vacate the consent decree. The court heard evidence on that petition and denied relief.

On January 3, 1984, Maharishi International University filed a request that plaintiff, Carlsen and one Vincent McCarthy show cause why they should not be found in contempt for violating the injunctive provisions of the consent decree. The court issued a rule to show cause on these allegations. Discovery was had and hearings were held on the contempt charges. These hearings began on February 7, 1984, and continued from time to time thereafter. The hearings were concluded in July. On October 17, 1984, the court found that plaintiff, Carlsen and McCarthy were all guilty of willfully violating the injunction contained in the consent decree. Plaintiff and Carlsen were fined a total of $2000, and McCarthy was fined $1000. In addition, Carlsen was ordered to serve forty days in the county jail.

On April 15, 1985, Maharishi International University filed an application for attorney fees based upon the indemnification clause in the consent decree, which has previously been set out in this opinion. Carlsen did not respond to this application nor did he appear at the hearing subsequently held with respect thereto. Plaintiff filed a written resistance to the request and appeared at the hearing through counsel. Plaintiff's resistance to the application for attorney fees made the following contentions: (1) that the consent decree was void as being against public policy, (2) that the consent decree was of no force and effect during the period of time plaintiff allegedly violated its provisions because it had not yet been entered of record in the office of the clerk of court, and (3) that any indemnification for violation of the consent decree required the bringing of an independent action in which plaintiff might be accorded a right of jury trial.

The district court rejected the legal defenses posed in plaintiff's resistance. After considering evidence presented by attorneys for Maharishi International University concerning the attorney fees which the latter had incurred in seeking to curb plaintiff's violations of the decree, the court ordered plaintiff and Carlsen to indemnify the University for $62,090 in attorney fees and $1818 in out-of-pocket expenses.

Plaintiff challenges that order in this original certiorari action. Carlsen has not joined in this effort. Plaintiff urges (1) that no provision of the consent decree should be enforced by the court because the decree violates public policy, (2) that the alleged violations of the consent decree

occurred before the decree was entered of record, (3) that the indemnification provisions of the consent decree may only be invoked by bringing an independent action at law, and (4) that a substantial portion of the legal services for which the court required plaintiff to indemnify Marharishi International University relate to matters other than violations of the consent decree. Other facts bearing upon our resolution of these issues will be discussed in connection with our consideration of the legal arguments made by the parties.

## I. *Validity of Consent Decree.*

At the outset, we consider plaintiff's contention that the consent decree so violates public policy that the court should have declined to enforce its provisions. Plaintiff argues that, although the parties gave the transaction the title of "Consent Judgment and Order of Permanent Injunction," the decree was not a legal determination but rather "merely a prize in a contest where the court's power to render judgment and approve the matter was delegated to the Maharishi Mahesh Yogi." Such delegation of judicial power, plaintiff urges, is so violative of public policy that the court should refuse to enforce the decree.

■ We have said that a judgment by consent is, in substance, a contract of record made by the parties and approved by the court, and it is not a judicial determination of any litigated right. *Timmons v. Holmes,* 249 Iowa 888, 890, 89 N.W.2d 371, 372 (1958). Thus, we believe that a court's role in approving a consent decree involves a determination of whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues in the litigation. It is not necessary in order to uphold the validity of a consent decree that the solutions therein contained be those the court itself would have adopted if it were adjudicating the controversy.

■ The consent decree at issue in the present case was not entered until the parties were well into the litigation to which it related. The court file already contained more than nine volumes of legal-size paper numbering more than fifteen hundred pages. As a result of the court's determination of the parties' motions for summary judgment, it was fully aware that the case carried a potential for an exceedingly lengthy and difficult trial. The controversy involved a conflict between the deeply held convictions of two factions within an educational movement. The conflict had grown to involve students at Maharishi International University whose future education could have been adversely affected by the continuation of the litigation. Viewed in this light, we cannot fault the court's willingness to adopt a solution to the conflict which the parties themselves had worked out in arm's length negotiations.

■ The court did perhaps go too far in one respect. We do not approve its action in agreeing to interpret the Maharishi's answers to the proffered questions. This, we believe, went beyond the role which the court should have assumed in approving a consent decree. But our disapproval of such action, taken prior to the entry of the decree, does not require us to hold that the decree itself was contrary to public policy. Plaintiff at no time has contended that the court misinterpreted the Maharishi's responses to the four questions. It also has never contended that the decree was other than that to which it agreed in the event that the Maharishi's responses were as they turned out to be. The decree was therefore that which plaintiff was willing to accept given the realities of the situation which confronted it.

We are not convinced that the decree itself is violative of public policy in the manner in which it disposes of the controverted issues within the litigation. The University, as one of the defendants in that litigation, was threatened with future disruption of its educational processes by plaintiff's activities. It realized that this circumstance probably would not give rise to an adequate remedy at law. Accordingly, the granting of injunctive relief on its counterclaim does not appear to have been inappropriate. Given this circumstance, plaintiff has failed to demonstrate that the provisions for indemnification of the Univ-

ersity against expenses incurred in enforcing the injunctive provisions of the decree are violative of public policy. The district court did not act illegally or beyond its jurisdiction in enforcing the decree according to its terms over plaintiff's objections on public policy grounds.

II. *Failure to Enter Decree of Record at the Time of Its Rendition.*

We next consider plaintiff's contentions that the alleged violations of the decree for which the University was awarded indemnity occurred prior to the time the decree was finally entered of record on November 17, 1983. Plaintiff contends that until the decree was so entered violation of its provisions could not have given rise to a legally cognizable claim on the University's part.

We have held that a judgment is rendered when it is announced or when the judge signs an enrolled judgment order but that there is no competent evidence of such rendition until entry is made upon the court record. *Moreno v. Vietor,* 261 Iowa 806, 810, 156 N.W.2d 305, 307 (1968). Our cases recognize, however, that for some purposes, as between the parties themselves, the judgment relates back to the time of its rendition. *Street v. Stewart,* 226 Iowa 960, 963, 285 N.W. 204, 205 (1939); *Coffey v. Gamble,* 117 Iowa 545, 550, 91 N.W. 813, 814 (1902). Plaintiff was a signatory to the consent decree. The signature of its authorized representatives appears following the words "[a]greed to and effective this sixteen day July 1983."

■ We need not determine in the present action whether the court properly acted to impose a sanction of contempt upon plaintiff for violations of the decree before its formal entry of record. Plaintiff has not acted within the time permitted by law to challenge the court's determination on the contempt matters.[1] The present certiorari action relates only to the award of attorney fees. We hold that for purposes of enforcing the indemnification provisions of the consent decree its proscrip-

tive provisions are deemed to relate back to the time of its rendition on July 16, 1983.

In so holding, we in no way give approval to the practice of withholding the decree from the public record for nearly four months. Such action is in contravention of established rules of procedure and should not have been approved by the district court.

III. *Necessity of Bringing Independent Action to Enforce Indemnification Provisions of Consent Decree.*

■ Plaintiff contends that the action taken by the district court in ordering payment by plaintiff of the University's attorney fees constituted a sanction for contempt illegal under Iowa Code section 665.4 (1983). As support for this contention, it relies on *Wilson v. Fenton,* 312 N.W.2d 524, 529 (Iowa 1981). We believe this argument misapprehends the court's basis for ordering reimbursement of the University's attorney fees. The court specifically bases its order on the language of the consent decree which provides for indemnification "against any loss, damage, or expense including reasonable attorneys' fees which may be sustained by reason ... of having to enforce the stipulation or this judgment." Thus, we believe that although the order relating to attorney fees was preceded by a finding of contempt on the part of the plaintiff it was clearly not intended by the court as an additional sanction under the contempt power.

Plaintiff urges that the language of the indemnification clause in the consent decree which states "[t]he parties are entitled to bring an action for specific performance, damages at law or in equity" should be interpreted as requiring the commencement of an independent action at law in order to obtain indemnity for attorney fees incurred in seeking to curb alleged violations of the decree. It asserts that the proceedings employed by the district court denied its right to a jury trial. We disagree. We

1. No appeal lies from an order to punish for contempt but the proceedings may, in proper cases, receive appellate review by certiorari. Iowa Code § 665.11 (1983). The time for seeking certiorari review is prescribed by Iowa R.App.P. 301 which requires filing the petition within 30 days of the challenged order. Plaintiff made no attempt in the present case to review the district court's contempt order within this time period.

recognized in *Bailey v. Iowa Beef Processors, Inc.*, 213 N.W.2d 642, 644 (Iowa 1973), *cert. denied*, 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974), that a provision in a consent decree retaining jurisdiction for enforcing its terms will be enforced in accordance with its plain meaning. The present consent decree contains a clause which provides,

> The parties agree that the court shall retain jurisdiction over plaintiffs and intervenors for the purpose of enabling any of the parties to the final judgment of the court to apply to the court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this final judgment and for the enforcement of compliance and punishment of violations of the judgment.

■ Because plaintiff was already enjoined under the decree from performing the prohibited acts upon which the present attorney fee dispute is based, and because a court always retains its contempt powers, a likely purpose for the express retention of jurisdiction in the decree was to permit the granting of appropriate monetary relief for violation of the judgment. We believe the district court correctly interpreted its own decree in allowing the University to file its application for indemnification in the original action. Plaintiff was afforded adequate notice and opportunity to be heard on the University's claim for indemnity. Because we interpret the consent decree as authorizing the procedure invoked by the court as a matter ancillary to the original litigation, plaintiff was not entitled to a jury trial.

IV. *Whether Attorney Fee Claim Improperly Included Services for Matters Other Than Those Relating to Enforcement of Consent Decree.*

Finally, we consider plaintiff's contention that the University's itemized application for attorney fees and the affidavits in support thereof show on their face that some of the services included relate to matters other than plaintiff's violations of the con-

sent decree. In considering this contention, we note that the record is very meager with respect to the nature of the legal services for which the University seeks reimbursement. An itemized list of services together with supporting affidavit of counsel was filed with the court. The description of some of the services is very sketchy and difficult to interpret. The situation is hampered by the fact that the district court made no findings of fact with respect to the various segments of the itemized claim. The court simply allowed the entire sum claimed on the ground that the amounts which appeared were fair and reasonable.

Although we have said that a litigant ordinarily waives insufficiency in a court's findings by not filing a motion requesting expanded findings of fact, *see, e.g., Estate of Grossman v. McCreary*, 373 N.W.2d 113, 114 (Iowa 1985); *Iowa Department of Transportation v. Nebraska-Iowa Supply Co.*, 272 N.W.2d 6, 15–16 (Iowa 1978), we do not believe this is a case where that rule may be applied to plaintiff's disadvantage. Counsel's itemization of services performed reveals on its face that some of the services for which the University was billed relate to the petition of the plaintiff to vacate the consent decree under Iowa Rule of Civil Procedure 252.

■ We have no problem with determining that all of the services relating to investigation of plaintiff's violations of the decree and pursuing contempt charges fell within the indemnity clause. We cannot, however, interpret the indemnification portions of the consent decree as also permitting indemnification for the attorney fees which were incurred by the University in defending against an attack on the decree's validity under Iowa Rule of Civil Procedure 252. Consequently, we must conclude that the district court's order for reimbursement of attorney fees included some items not properly recoverable. For this reason, we sustain the writ of certiorari only so far as the district court's order has been demonstrated to include improper items of litigation expense.[2] We annul the writ with

2. Other ambiguous items appearing on the Univ-    ersity's itemized attorney fee claim may fall

respect to all other contentions. The matter is remanded to the district court for further consideration of the claim in light of this opinion. Upon reconsidering of the claim, the district court shall make further findings of fact which clearly demonstrate that the services for which the University is permitted to recoup are within the scope of the indemnification clause.

Costs in the supreme court are taxed seventy-five percent to plaintiff and twenty-five percent to defendant.

WRIT SUSTAINED IN PART AND ANNULLED IN PART.

All Justices concur except WOLLE and SCHULTZ, JJ., who concur specially, and REYNOLDSON, C.J., and HARRIS, McGIVERIN, and LAVORATO, JJ., who dissent.

WOLLE, Justice (concurring specially).

I concur in the majority opinion but write separately on the question whether this consent decree so violated public policy as to be void.

Our focus is on a consent decree that was part of an elaborate settlement agreement negotiated and drafted by attorneys representing the parties, approved by the trial court, and duly executed. *See McCarthy v. Iowa Dist. Court,* 386 N.W.2d 122, 126 (Iowa App.1986). The plaintiff contends this document, though deliberately agreed to and intended to settle the parties' rights and obligations, should be declared void and unenforceable because it contained terms inappropriate for a judgment rendered by the court. The majority opinion, like the dissent, recognizes that the consent decree was flawed in more than one respect. In my view, however, the majority has correctly parsed the entire document, refusing to uphold invalid portions of the consent decree but saving those portions that the district court had the power to enforce.

In division I the majority makes clear that the consent decree improperly enmeshed the court in the role of interpreter

of four answers yet to be given by the Maharishi. But the involvement of the court did not prejudice the plaintiff whatsoever because the Maharishi's answers clearly and unequivocally saddled the plaintiff with the restrictions it had agreed upon. As the majority emphasizes, a consent judgment is a settlement agreement, not a pure judicial decree. The majority appropriately gives the district court considerable discretion to approve or disapprove the terms of a settlement, then enforce those terms that are not violative of public policy. Indeed, the attorneys and district court were serving an important public purpose in attempting to resolve a complex lawsuit by settlement rather than prolonging the trial. We should commend judges who attempt to resolve disputes by settlement or other alternative methods that involve innovative techniques. *See generally* T. Lambros, *The Judge's Role in Fostering Voluntary Settlements,* 29 Villanova L.Rev. 1363, 1369–73 (1984).

The plaintiff also contends the consent decree was void because it was not promptly made a matter of public record in the office of the clerk of court. The majority opinion, like the dissent, does not approve the parties' withholding of the decree from filing in the clerk's office for nearly four months. Again, however, the plaintiff has not demonstrated that the side agreement to withhold the consent decree from public record caused any prejudice to the plaintiff or any other person. Certainly court records appropriate for filing should be made a matter of public record, but the rule is not without exception. Iowa Code section 675.30 permits enforcement of a written agreement, approved by the court, compelling support of a child even though there is no provision for filing the document or otherwise disclosing it to the public until a dispute arises in court concerning its validity. *See In re Devine's Estate,* 255 Iowa 726, 731–32, 123 N.W.2d 898, 901–02 (1963); *Hanke v. Burrier,* 368 N.W.2d 729, 730–31 (Iowa App.1985); *cf.* Iowa Code ch. 678 (1985) (entitled "Submitting controver-

outside the scope of the indemnification clause contained in the consent decree. Plaintiff

should be permitted to seek clarification of these matters on remand to the district court.

sies without action or in action"). In many cases and varied contexts we have long emphasized that courts should favor the settlement of disputes and encourage agreements to avoid or end litigation. *See, e.g., Dyer v. National By-Products, Inc.,* 380 N.W.2d 732, 733 (Iowa 1986) ("[T]he law favors the adjustment and settlement of controversies without resorting to court action."); *Helms v. Helten,* 290 N.W.2d 876, 882 (Iowa 1980) ("We have in the past encouraged [familial] settlements, [citing cases] and continue to do so."); *Moore v. Bailey,* 163 N.W.2d 435, 437 (Iowa 1968) ("Offers of settlement are to be encouraged as a means of awarding prolonged, extensive and uncertain litigation."); *Horton Township v. Drainage Dist. No. 26,* 192 Iowa 61, 66, 182 N.W. 395, 397 (1921) ("[T]he law favors compromises"; supervisors' agreement with contractor upheld).

I concur in the majority opinion which holds the plaintiff to the agreements it made, but only to the extent public policy was not violated.

SCHULTZ, J., joins this special concurrence.

REYNOLDSON, Chief Justice (dissenting).

I would sustain the writ on the ground the underlying "consent decree" is void for gross violation of public policy and Iowa law. Therefore, in my view, trial court had no jurisdiction to impose punishment for violation of its terms, nor award attorney fees to enforce it.

However much we may empathize with trial court's understandable reluctance to referee an exotic and lengthy trial, the court permitted the parties to implicate it in a bizarre and overt scheme to violate our long-standing rules relating to judgments,

a result that should not be condoned by enforcing some of the provisions of the instrument while ignoring others.

The "consent decree" was nothing more than a paper signed by the parties to the initial dispute, made a "decree" by the signature of the judge beneath a one-line endorsement. Obviously, the instrument was never intended to be filed and entered of record by the clerk of court as provided by Iowa Rules of Civil Procedure 226 and 227. "An entry in either or both the judgment index or combination docket which refers to a judgment is not sufficient to comply with the requirement that a judgment be entered of record." *Moreno v. Vietor,* 261 Iowa 806, 811, 156 N.W.2d 305, 308 (1968).

Mr. Goldstein, one of the attorneys for defendants in the underlying action, brought the "decree" to the clerk on July 22, 1983, and asked that it be stamped "filed" and returned to him without entering it of record.[1] The clerk testified without challenge that on the same day the court also told her it was not to be filed of record. Months later Mr. Goldstein brought the paper back and requested that it be filed. No judge ever ordered the document filed or countermanded the court's July 22, 1983, instruction.

Article X of the "decree" provides further proof of the parties' intent. In relevant part it states:

X. Non-Disclosure

Any ... consent judgments ... shall not be publicized or used by any party and others for legal, nonlegal, or extralegal purposes anywhere in the world.

I suggest a "decree" that the parties, and apparently the court, contemplated would be hidden from public view in violation of rules that have the force and effect of statutes, *Kutrules v. Suchomel,* 258 Iowa

---

1. It is more than anomalous that today the court condones the deliberate withholding of a decree from the record, an act for which we have disciplined lawyers. Thus in *Committee on Professional Ethics & Conduct v. McGrevey,* 395 N.W.2d 894 (Iowa 1986), we wrote:

We agree with the commission's conclusion that McGrevey violated DR7–102(A)(3). Once signed by the district court, the order "was no longer a private paper and became a court document in the public domain." *Committee on Professional Ethics and Conduct v. Hurd,* 325 N.W.2d 386, 390 (Iowa 1982). The court entrusted McGrevey to file the order. *Id.* By his delay in filing it, he "concealed or knowingly failed to disclose that which he was required by law to reveal." Iowa Code Prof. Resp. DR7–102(A)(3).

*Id.* at 896.

1206, 1210, 141 N.W.2d 593, 596 (1966), and was in fact so hidden until one of the parties found it advantageous to produce it, should be declared void and of no effect as a matter of public policy, *see Scieszinski v. City of Wilton*, 270 N.W.2d 450, 452–53 (Iowa 1978) (Petition filed with clerk but sealed under *ex parte* court order intentionally bypassing the requirement the original notice be contemporaneously delivered to clerk with directions for service will not serve to toll the statute of limitations.). Unfortunately the message of the majority opinion is that one of the parties should be rewarded. This result of course invites future litigants to pursue the same course.

HARRIS, McGIVERIN, and LAVORATO, JJ., join this dissent.