**ANNETTE B. on behalf of herself and her two infant children, Plaintiff,**

v.

**Pam HOLDER, Director of the Lauderdale County Department of Pensions and Security; Gary Cooper, Commissioner of the Alabama Department of Pensions and Security; Lamar Lott, Director of the Bureau of Public Assistance of the Alabama Department of Pensions and Security; and Patricia Harris, Secretary of the U. S. Department of Health, Education and Welfare, Defendants.**

Civ. A. No. 80–168–N.

United States District Court,
M. D. Alabama, N. D.

July 15, 1980.

Legal Services Corp. of Alabama, Lawrence F. Gardella, Montgomery, Ala., Legal Services Corp. of Alabama, H. Floyd Sherrod, Jr., Florence, Ala., for plaintiff.

Charles A. Graddick, Atty. Gen. of Alabama, Montgomery Ala., Mary Lee Stapp, Clyde P. McLendon, Jamie L. Pettigrew, Roger J. Burnett, Asst. Attys. Gen., State Dept. of Pensions & Sec., Montgomery, Ala., for defendants Holder, Cooper and Lott.

Barry E. Teague, U. S. Atty., Susan Bevill, Asst. U. S. Atty., Montgomery Ala., Judith S. Scolnick, Asst. Atty. Gen., Federal Program Branch, Civil Division, Dept. of Justice, Washington, D. C., and Lewis K. Wise and Judith F. Ledbetter, Dept. of Justice, Washington, D. C., for defendant Harris.

## MEMORANDUM OPINION

HOBBS, District Judge.

This action is brought by a welfare recipient to challenge the action of the Alabama Department of Pensions and Security which denied benefits to her two minor children on the ground that both parents of these children live in the household with the children. Plaintiff Annette B. unsuccessfully requested a hearing at which she sought to prove that her husband is not the parent of either of her two children and, therefore, in fact the children do not have two parents living in the household. Plaintiff contends that the denial of a hearing on this issue violates her right to due process and is unconstitutional under the Fourteenth Amendment of the United States Constitution, and is inconsistent with the Social Security Act,[1] and applicable federal regulations.[2]

Plaintiff also claims a violation of her rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. § 1343 as to the Alabama defendants and jurisdiction over Patricia Harris, Secretary of the United States Department of Health, Education and Welfare, by virtue of 28 U.S.C. § 1331. Plaintiff seeks in this Court declaratory and injunctive relief.

Following a hearing, this Court granted a temporary restraining order directing that welfare payments to plaintiff for her minor children should continue pending a further hearing. After a subsequent full hearing, the parties agreed to allow the temporary restraining order to remain in effect pending the decision of this Court.

## FINDINGS OF FACT

1. The Alabama Department of Pensions and Security participates in the aid to families with dependent children (AFDC) program pursuant to 42 U.S.C. § 601 et seq. This program is funded in substantial part by the Department of Health, Education and Welfare (HEW), now the Department of Health and Human Services (HHS).

The Alabama Department of Pensions and Security (hereinafter referred to as the

1. 42 U.S.C. § 601 et seq.

2. 45 C.F.R. § 233.90(a).

Department) has agreed to administer the AFDC program in accordance with the Social Security Act and all applicable federal regulations.

2. Plaintiff Annette B. is an eighteen-year-old woman now living with her husband and her two children. Although both children were born after plaintiff and her husband married, plaintiff alleges that her husband is not the father of either child.

3. At the time plaintiff and her husband married, she was pregnant with her first child. Shortly after the marriage, her husband was jailed. Plaintiff applied for AFDC for herself and her unborn child. At that time, she identified to the Department the person she claimed was the father agreeing to cooperate in seeking child support from him and assigning all her rights to such support to the Department.

4. While her husband was still in jail, plaintiff again became pregnant. She so informed the Department, naming the person she claimed was this unborn child's father and again assigning her support rights to the Department.

5. Benefits were provided for both of her children during the time plaintiff's husband was in jail.

6. State defendants sought to terminate plaintiff's AFDC and Medicaid benefits when plaintiff's husband was released and returned to plaintiff's household, because they stated that the children's "legal father" was now living with them. Plaintiff requested a fair hearing to contest this determination, and her benefits were continued pending the hearing.

7. At the administrative hearing, plaintiff attempted to introduce evidence that her husband could not be the father of either child. State defendants ruled that this evidence was irrelevant, because plaintiff had not obtained a legal determination in a court that her husband was not the children's father.

## CONCLUSIONS OF LAW

Section 606(a) of Title 42 provides in part:

(a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent   .   .   . .

Federal Regulation 45 C.F.R. § 233.90(a) in part provides:

(a) *State plan requirements.* A State plan under Title IV–A of the Social Security Act shall provide that:

(1) The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State, nor may the State agency prorate or otherwise reduce the money amount for any need item included in the standard on the basis of assumed contributions from nonlegally responsible individuals living in the household.

Under the Social Security Act, the Department is obligated to take into consideration in determining "need" of children any contributions from a man living in the house whether or not such man is the father of the children. Thus, if Annette B.'s husband is providing support to the children, such support would be considered in determining the "need" of the children. If "need" did not exist, the children would not

be entitled to benefits even if the contributions to them came from one unrelated to the children. In the instant case, the "need" of the children is established; the question is whether the presence of Annette B.'s husband in the household defeats the right of the needy children to obtain benefits. *King v. Smith*, 392 U.S. 309, 319, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118 (1968).

The Act defines a needy child as one deprived of parental support of one parent.

The quoted Federal Regulation § 233.-90(a) states unequivocally that determination as to whether a child has a parent in the household which would disqualify the child for benefits shall be made only with respect to the child's "natural or adoptive parent," or a stepparent if such stepparent is ceremonially married to the natural or adoptive parent and if the law of the state imposes a duty of support on such stepparent.

In some states a stepfather is under a legal obligation to support his minor stepchildren. But under the law of Alabama, a stepfather is not so obligated. *Engelhardt v. Yung's Heirs*, 76 Ala. 534 (1884).

The sole basis for disqualifying the children of Annette B., therefore, is if her husband is the natural or adoptive parent of her children. No one contends that these children have ever been adopted. The state and federal defendants agree with plaintiff that these children are disqualified only if Annette B.'s husband is the natural father of these children. The defendants acknowledge that these children would be entitled to benefits if an Alabama court makes a determination that the husband is not the natural father of these children. The defendants insist, however, that plaintiff is not entitled to an administrative hearing at which the Department would make a determination as to whether Annette B.'s husband is the natural father. Thus, the area of disagreement in this Court is quite narrow. Is the plaintiff entitled to an administrative hearing at which she can attempt to overcome the presumption that her husband is the father of her children? This Court holds that she is.

Defendants insist that children born during wedlock are presumed to be the children of their mother's husband. Unquestionably, Alabama law creates a powerful presumption to this effect. But the presumption is rebuttable where the evidence is clear and convincing in showing that "it was naturally, physically or scientifically impossible" for the husband to be the father. *Leonard v. Leonard*, 360 So.2d 710 (Ala.1978). Under the *Leonard* case, testimony of the husband or wife is inadmissible by way of proving such impossibility. A reading of the *Leonard* case will show the magnitude of the problem for anyone seeking to prove that a husband is not the natural father of children born to the mother during wedlock.

Defendants argue that a hearing at the administrative level to allow an attack on the presumption of legitimacy is unwise and is not consistent with opinions of the Supreme Court of the United States in construing the Act. Defendants argue that Annette B.'s husband has a legal duty to support the children until an Alabama court adjudicates otherwise, and, therefore, the children of Annette B. are disqualified because they have two persons present in the household both of whom are legally obligated to support the children. At least two answers are appropriate to this argument.

First, the Social Security Act and the Federal Regulation are not cast in terms of whether there are two persons in the household who are legally obligated to support the children. The sole requirement under the Act and the Federal Regulation as to Alabama needy children is whether there are two "natural or adoptive parents" in the household. Whether or not the statute should provide otherwise is not for this Court to determine. As the statute is written, however, the appropriate agency cannot avoid, where the mother asserts that the children have no natural or adoptive father in the household, making a determination as to this fact.

Second, and more importantly, although defendants argue that until the husband has an adjudication that he is not the fa-

ther, the Alabama presumption operates to make him legally responsible for the support of the children. This is a misconception of the effect of the presumption. The husband is not under a legal duty in Alabama to support children born during the marriage unless he is their adoptive or natural father. In a suit brought against the husband for non-support, the husband would have to overcome the presumption, but if he overcame it, he would have no duty to support retroactively or prospectively. Thus, without an adjudication of paternity one cannot assume, as the defendants do, that the husband has a legal duty to support based solely on the presumption of the children's legitimacy. He has no legal duty to support by reason of the children's birth during the marriage; only if he is in fact the father of the children does such a duty exist. Annette B.'s husband has no legal duty to support the children because he is presumptively their father. He only has such a duty if in fact he is their father, and the presumption merely operates to impose a heavy burden of proof on a party seeking to overcome it.

In determining whether children or others are entitled to welfare benefits, appropriate state agencies make thousands of administrative determinations at least as difficult as the one which would be posed here as to paternity. Indeed, because of the presumption of paternity for the husband and the interpretation put on this presumption by the Alabama courts, it would require an overwhelming fact situation to overcome the presumption; therefore, the Department's task should be far easier than with most of its factual determinations.

In *Owens v. Parham*, 350 F.Supp. 598 (N.D.Ga.1972), the party seeking welfare benefits was confronted with a presumption that adults living in the house with her were capable of contributing financially to support the household. The court in *Owens* held that the failure of the state agency to give recipient an opportunity at a hearing to rebut the presumption violated the due process rights of the plaintiff in violation of the Fourteenth Amendment of the Constitution.

This Court holds as did the court in *Owens* that within thirty days after filing of this order, the Department shall implement suitable means of determining at a hearing whether plaintiff can overcome the presumption that her children born during wedlock are the children of her husband. In such a hearing, the hearing officer should be guided by the same strict evidentiary requirements as laid down by the Alabama court in *Leonard v. Leonard, supra.* Whether the children of Annette B. are entitled to benefits will turn on the determination at that hearing as to whether her husband is the father of the children. Benefits to the children shall continue unless there is a determination in an administrative hearing or an adjudication in a court that Annette B.'s husband is the father of her children.

This Court is aware that HEW has been and is zealous in protecting the rights of welfare recipients generally, and needy children especially, from state promulgated regulations which HEW deems overly restrictive on rights provided them by the Social Security Act. In seeking to protect the rights of dependent children, HEW has done legal battle with a number of state agencies, including its co-defendants in this case. See *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1969); *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975).

HEW contends the position it takes in this case that plaintiff Annette B. is not entitled to a hearing is compelled by the decision of the Supreme Court in *King v. Smith, supra.* In *King*, the Supreme Court considered a regulation of the Alabama Department that defined a man living in the home with the mother and the children, even though unmarried and not the natural father of the children, as a "substitute father" who met the requirement of a second parent living in the home, thus depriving the children of benefits otherwise available to them.

The defendants in particular rely on the following language from the *King* case which rejected the Department's argument in support of its regulation concerning "substitute fathers":

> The difficulty with this argument is that it fails to take account of the circumstance that children of fathers living in the home are in a very different position from children of mothers who cohabit with men not their fathers: the child's father has a legal duty to support him, while the unrelated substitute father, at least in Alabama, does not. We believe Congress intended the term "parent" in § 406(a) of the Act, 42 U.S.C. § 606(a), to include only those persons with a legal duty of support. 392 U.S. at page 327, 88 S.Ct. at page 2138.

We have already pointed out why defendants cannot assume that Annette B.'s husband has a legal duty to support. Moreover, the policy articulated by the Court in the *King* case is inconsistent with defendants' argument here.

As the Supreme Court made clear in *King v. Smith*, the Act seeks to provide benefits to needy children unless two persons in the household are so related to the children that it is reasonable to expect those persons to support the children. It is at least as illogical to assume that a man married to a woman will support her children born to her by another man during the period of their marriage as that a "substitute father" will do so. Of course, either may do so, and to the extent he makes regular contribution to their support, such contribution would be considered in determining the need of the children.

In *Lewis v. Martin*, 397 U.S. 552, 558, 90 S.Ct. 1282, 1285, 25 L.Ed.2d 561, the Supreme Court stated: ". . . HEW might reasonably conclude that only he who is as near as a real or adoptive father would be has that consensual relation to the family which makes it reliably certain that his income is actually available for support of the children in the household."

Also, in *Lewis*, the Court stated:

> Our decision in *King v. Smith* held only that a legal obligation to support was a necessary condition for qualification as a "parent"; it did not also suggest that it would always be a sufficient condition. 397 U.S. at page 559, 90 S.Ct. at page 1285.

In *Van Lare v. Hurley*, 421 U.S. 338, 346, 95 S.Ct. 1741, 1747, 44 L.Ed.2d 208 (1975), the Supreme Court summarized its holding in *Lewis v. Martin*: "In short, we held that the Social Security Act precludes treating a person who is not a natural or adoptive parent as a breadwinner unless the bread is actually set on the table."

The statutory language is clear. The HEW regulation is clear. The latest decision of the United States Supreme Court on this subject is clear.[1] A needy child is not to be denied benefits by reason of the presence in the household of one "who is not a natural or adoptive parent."

Defendants cannot deny plaintiff a hearing because of a rebuttable presumption in state law, and then determine that because no party has overcome the presumption in a state court proceeding, the dependent children are to pay the price by being denied benefits. Nothing in *King* suggests that one seeking benefits for dependent children must be denied benefits for those children because the appropriate agency refuses a hearing at which it may be established that the person purportedly disqualifying the children is in fact not the father.

By her third amended complaint, plaintiff asserts claims for relief under 5 U.S.C. §§ 551 et seq., 5 U.S.C. § 552, and 44 U.S.C. § 1501 et seq. In light of this Court's holding rejecting the policy advocated herein by defendant Harris, it is unnecessary to analyze in detail each claim presented. Suffice it to say, however, that defendant Harris' policy challenged herein in the view of this Court is not subject to notice and

---

1. *King* also quotes approvingly Alabama welfare regulations at 392 U.S. p. 331, 88 S.Ct. p. 2140: "Report parents who are legally responsible under Alabama law. These are the *natural* or *adoptive* parents of the child." (Emphasis the Court's)

comment rulemaking because it is an interpretation within the meaning of 5 U.S.C. § 553(b)(A). See *Brown Exp. Inc. v. United States,* 607 F.2d 695 (5th Cir. 1979); *Gibson Wine Co. v. Snyder,* 194 F.2d 329 (D.C. Cir. 1952). Thus, plaintiff's claim under the Administrative Procedure Act has no merit. Similarly, this Court finds that plaintiff's claims under the Freedom of Information Act and the Federal Register Act have no merit.

The Court will set a hearing on the question of the plaintiff's attorney fees. A judgment and order will be entered in accordance with this opinion.