Candice C. GREMILLION ex rel. Gail G. GREMILLION, Appellee,

v.

Allen P. ERENBERG, Appellant,

and

Mark Gremillion, Respondent, Necessary Party.

No. 86–170.

Supreme Court of Iowa.

March 18, 1987.

Leon F. Spies, Iowa City, for appellant.

Timothy L. Korb, Omaha, Neb., and Bradford L. Davis, Council Bluffs, for appellee.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

LARSON, Justice.

Respondent, Allen Erenberg, appeals and petitioner, Candice Gremillion (Candy), cross appeals from a judgment in a paternity and support action under Iowa Code chapter 252A (1983). We affirm on the main appeal and affirm the cross appeal with modifications.

Candy Gremillion was married to Mark Gremillion from 1976 to 1981. In 1979, she began an intimate relationship with Erenberg and, in December 1980, gave birth to a daughter, Gail. Seven days after Gail's birth, Candy and Mark executed a stipulation in their pending dissolution case. The stipulation, which referred to Gail as the parties' minor-child, provided that Candy was to have custody of Gail and Mark was to have custody of an older son. It also provided that no child support would be paid for either child but Mark would provide medical insurance for both children.

The issue of Gail's paternity was not raised at any time during the dissolution proceedings. Despite her awareness of the strong possibility that Erenberg was Gail's father, Candy kept the issue silent. She testified this was because of Erenberg's desire to protect his family and reputation.

At various times after Gail's birth, Erenberg supplied financial support for her and her mother. The testimony conflicted, however, as to the amounts and regularity of the support. Candy and Erenberg

moved into an apartment in Iowa City in December 1982 and lived together until August 1983 when Erenberg moved out.

During the trial to the court, a witness with a doctorate in medical genetics testified that the chance that Mark Gremillion is Gail's father is virtually none and that the chance is 98.25% that Erenberg is her father. The court found Erenberg to be the father and ordered him to pay $400 per month, retroactive to January 1, 1984. Erenberg appealed, and Candy cross appealed.

Erenberg's appeal asserts that (1) the action against him is barred under Iowa Code section 675.30; and (2) the trial court erred in ordering retroactive support. (He does not challenge the district court's finding of paternity.) Candy asserts on her cross appeal that the trial court erred (1) in setting the amount of monthly child support; (2) in not requiring Erenberg to pay support from an earlier point in time; (3) in not ordering Erenberg to pay Candy's expert witness fee in full; and (4) in failing to award her attorney fees.

### I. *Erenberg's Appeal.*

Erenberg claims that the stipulation between Mark and Candy bars the present action, relying in part on Iowa Code section 675.30, which provides:

> An agreement or compromise made by the mother or child or by some authorized person on their behalf with the father concerning the support of the child shall be binding upon the mother and child only when adequate provision is fully secured by payment or otherwise and when approved by a court having jurisdiction to compel support of the child. *The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support of the child.*

(Emphasis added.)

■ The purpose of chapter 675 is to provide a means for establishing paternity and providing support for children born out of wedlock. *See* Iowa Code § 675.30; *In re Estate of Devine,* 255 Iowa 726, 732, 123 N.W.2d 898, 902 (1963). An agreement under section 675.30 is therefore one that is aimed at accomplishing that purpose. The dissolution stipulation in this case, however, concerned only the division of rights acquired in the marriage; it did not even purport to deal with the issue of paternity. We conclude that section 675.30 does not bar Candy's paternity suit against Erenberg, because the dissolution stipulation was not an "agreement or compromise" within the coverage of section 675.30.

■ Erenberg cannot be considered to be a third-party beneficiary to the stipulation, moreover, because there was no intent to benefit him. *See Long v. McAllister,* 319 N.W.2d 256, 262 (Iowa 1982); *Bailey v. Iowa Beef Processors, Inc.,* 213 N.W.2d 642, 645 (Iowa 1973), *cert. denied,* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974).

### II. *Retroactive Allowance of Support.*

The district court allowed support retroactive to January 1, 1984, apparently on the basis that Erenberg's voluntary support had ended on December 31, 1983. Erenberg argues that the allowance of retroactive support was erroneous, because until there was an adjudication that Erenberg was the father, or a severance of the parent-child relationship between Gail and Mark Gremillion, any support would have to be provided by Gremillion, not Erenberg. Candy responds that Mark was not Gail's father, so he had no general common-law or statutory duty to support her, nor was there a parent-child relationship to be terminated.

Erenberg relies on *In the Matter of Evans,* 267 N.W.2d 48 (Iowa 1978), to support his argument. In *Evans,* we held that, because a decree modification is prospective only, a former husband was responsible for support up to the date of the modification, despite the fact he was found not to be the father. *Id.* at 52. Analogizing to *Evans,* Erenberg argues that, until the paternity judgment was entered

against him, Mark Gremillion owed the exclusive duty of support.

■ At the outset, it should be noted that the analogy drawn by Erenberg to the modification of a dissolution decree is of little assistance because, unlike a modification, a chapter 252A judgment may be retroactive. *See Foreman v. Wilcox*, 305 N.W.2d 703, 704–05 (Iowa 1981) (analogizing to general rule in bastardy proceedings). Furthermore, under the Gremillions' dissolution decree, Mark had no duty to support Gail; he was only required to provide hospital insurance for her. While the decree could conceivably have been modified to impose a duty of support (at least if Mark did not challenge paternity), the fact is that until the judgment in the present case was entered against Erenberg, Candy remained the only person legally obligated to support Gail. We therefore reject the argument that Erenberg could not be obligated for retroactive support on the basis that Mark Gremillion remained liable for it. It was not error for the district court to impose a liability for support, retroactively, against Erenberg.

### III. *The Cross Appeal Issues.*

A. The district court ordered support of $400 per month, and Candy contends this was not enough. Based on the parties' relative incomes and net worth, she argues that he should be ordered to pay $550 per month. We agree with the district court, however, that, based on all the circumstances shown in the record, the amount of $400 per month is appropriate.

■ B. The court set January 1, 1984, as the starting date for the retroactive support. Candy argues that it should have started August 15, 1983, the date Erenberg moved out of the apartment he shared with Candy and Gail. The record establishes that any support Erenberg paid for Gail after August 15 was negligible. We believe it was error for the court to award retroactive support only from January 1, 1984, and modify the order to provide for support from August 15, 1983.

■ C. Candy also argues that the court erred in ordering Erenberg to pay only $150 of the expert witness fee charged by the medical geneticist. The total fee was $910. We reject this argument; a court's authority to order such fees is controlled by Iowa Code section 622.72, which limits to $150 the amount which may be ordered for expert witness fees.

■ D. The last issue on the cross appeal concerns attorney fees. Candy complains that the district court should have ordered Erenberg to pay reasonable attorney fees for the district court proceedings. As previously noted, this case proceeded under Iowa Code chapter 252A, and we find no authority under that chapter for the allowance of attorney fees. We therefore affirm on this issue.

We affirm on the appeal and, except as modified by paragraph B of Division III, we affirm on the cross appeal.

AFFIRMED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS APPEAL.