JOSEPHINE RIVERA *v.* STEVEN HEINTZ, COMMISSIONER, DEPARTMENT OF INCOME MAINTENANCE (8081)

DALY, FOTI and LAVERY, Js.

Argued February 8—decision released June 5, 1990

*Judith I. Solomon,* for the appellant (plaintiff).

*Martin Rosenfeld,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

LAVERY, J. This appeal presents the question whether § 2515.05 of the department of income maintenance (DIM) uniform policy manual,[1] which concerns the eligibility of applicants for benefits under the aid to families with dependent children (AFDC) program, is contrary to federal law.

The DIM denied the plaintiff's application for benefits based on her alleged failure to show, in strict accordance with § 2515.05, that the child within her care, Jason Muniz, is her half-brother. She appealed

---

[1] The DIM uniform policy manual is published pursuant to chapter 54 of the General Statutes as required by General Statutes § 17-3f (c). The sections of the policy manual are therefore regulations of the agency.

that decision to the DIM fair hearing officer, who upheld the denial of her application.

She then appealed to the Superior Court, which granted her motion for a remand to the hearing officer to present additional evidence. On remand, the stipulation of the parties directed the hearing officer to state whether he understood DIM policy to allow proof of the familial relationship other than by documentary evidence. In the decision after the remand, the hearing officer stated: "I must make my decision based on those conditions spelled out in the policy. If there was no legal documentation that a particular male is the father of a child (#1, 2 and 3 of 2515.05) or a signed statement by a male that he is the father (#4 of 2515.05) then relationship has not been established." The hearing officer again denied the application and a second appeal to the Superior Court was taken.

The Superior Court held that the hearing officer's denial of the application was not an abuse of discretion under General Statutes § 4-183 and therefore upheld the decision. The Superior Court did not consider the plaintiff's argument, which was presented to the hearing officer, that § 2515.05, which limited proof of the familial relationship to documentary evidence, was contrary to federal law.

The hearing officer found the following facts, among others. The plaintiff's father, Jose Luis Torres, and Marisol Muniz lived together in New York, where the plaintiff and her sister would often visit the couple. Muniz and Torres separated and, a few months after the separation, Muniz telephoned the plaintiff to say that she was pregnant with Torres' child. Jason Muniz was then born. The New York welfare department took custody of Jason from Muniz on the grounds that her boyfriend at the time was abusing the child. Upon sub-

mission of affidavits by Jason's mother, the plaintiff and the plaintiff's sister, the New York State Surrogate Court (Bronx) was satisfied that the plaintiff is the half-sister of Jason, and therefore granted the plaintiff guardianship of Jason.

The DIM policy of which the plaintiff complains is § 2515.05 of the DIM uniform policy manual.[2] Subsection B of that section provides: "The Department con-

---

[2] Section 2515.05 provides as follows:

"A. The child is considered to be living with a relative who is within a specified degree of relationship if such child is living with an individual who meets the degree of relationship listed in one of the following groups:

1. Blood relatives, including those of half-blood, and person of preceding generations as denoted by prefixes of grand, great, or great-great:

| | |
|---|---|
| father | uncle |
| mother | aunt |
| grandfather | immediate first cousins |
| grandmother | nephew |
| brother | niece |
| sister | |
| half-brother | great uncle |
| half-sister | great aunt |
| half-brother of father | great grandfather |
|   or mother (Equiv. to uncle) | great grandmother |
| | great-great grandfather |
| half-sister of father | great-great grandmother |
|   or mother (Equiv. to aunt) | great-great uncle |
| | great-great aunt |

2. Stepfather, stepmother, stepbrother, and stepsister regardless of marital status.

3. Relatives whose relationship to the dependent child is based on legal adoption:
adoptive father
adoptive mother
father of adoptive parent (equivalent to grandfather)
mother of adoptive parent (equivalent to grandmother)
child of adoptive parent (equivalent to brother or sister)
other relatives as listed, in the paragraphs above.

4. Spouses of any individuals named in the above groups even after the marriage is terminated by death or divorce.

5. Blood relatives listed above are still considered to be an acceptable degree of relationship even when the child is subsequently adopted.

B. The Department considers a male to be the father of the child if:

siders a male to be the father of the child if: 1. legal marriage existed between the male and the natural mother of the child at time of the child's birth and this fact is not contested by the natural mother; or 2. he has legally adopted the child; or 3. he has been adjudged to be the father by the court; or 4. he has signed a statement recognizing that he is the natural father of the child. This statement need not be notarized or witnessed." The DIM denied the plaintiff's application because the evidence she presented did not fit into any of these four categories. Moreover, the hearing officer refused to take the plaintiff's evidence into consideration.

The plaintiff contends that her evidence was sufficient to prove her relationship with Jason by a preponderance of the evidence, and that the DIM's policy of considering only evidence that falls within one of the four categories of § 2515.05 contravenes federal law in that it places an unduly strict burden of proof upon her. The plaintiff would have this court rule that the DIM must consider all relevant evidence in determining whether an applicant is a relative of a dependent child, and that the applicant must prove the familial relationship by only a preponderance of the evidence.

1. legal marriage existed between the male and the natural mother of the child at time of the child's birth and this fact is not contested by the natural mother; or

2. he has legally adopted the child; or

3. he has been adjudged to be the father by the court; or

4. he has signed a statement recognizing that he is the natural father of the child. This statement need not be notarized or witnessed.

C. The Department considers a female to be the mother of the child if:

1. legal marriage existed between her and the natural father at the time of the child's birth; or

2. she has legally adopted the child; or

3. her name is on the child's birth certificate."

We go further, however, and hold that it is contrary to federal law to place the burden of proving a familial relationship upon the applicant.

The AFDC program is established by part IV of the Social Security Act, 42 U.S.C. §§ 601–609. "The category singled out for welfare assistance by AFDC is the 'dependent child,' who is defined [at 42 U.S.C. § 606 (a)] as an age-qualified 'needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent and who is living with' any one of several listed relatives." *King* v. *Smith,* 392 U.S. 309, 313, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968).

"The AFDC program is based on a scheme of cooperative federalism. . . . States are not required to participate in the program, but those which desire to take advantage of the substantial federal funds available for distribution to needy children are required to submit an AFDC plan for the approval of [the secretary of health and human services]. . . . One of the statutory requirements is that 'aid to families with dependent children . . . shall be furnished with reasonable promptness to all eligible individuals.' [42 U.S.C. § 602 (a) (10) (A)]." Id., 316–17. "Thus, *King* v. *Smith* establishes that, at least in the absence of congressional authorization for [an] exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy clause." *Townsend* v. *Swank,* 404 U.S. 282, 286, 92 S. Ct. 502, 30 L. Ed. 2d 448 (1971). What is dispositive of this appeal, therefore, is our determination that § 2515.05 of the DIM policy manual excludes persons eligible under federal AFDC standards.

Section 2515.05 must be examined closely to determine who exactly is excluded. In this regard, only the effect of the regulation is relevant and it is immaterial whether that effect is intended or not. See *Buckner* v. *Maher,* 424 F. Sup. 366, 373 (D. Conn. 1976), aff'd, 434 U.S. 898, 98 S. Ct. 290, 54 L. Ed. 2d 184 (1977). ("This court finds that the Connecticut rule has the effect, if not the avowed intent, of presuming that transferred assets are still available to the transferor.")

Section 2515.05 has the effect of denying AFDC benefits to dependent children who reside with paternal relatives. Rarely will a child residing with a maternal relative be denied benefits under § 2515.05 (C) because if the child is born in a hospital, the mother's name will appear on the child's birth certificate, and the maternal relatives will be able to establish their familial relationship to the satisfaction of the DIM. A child abandoned by his father and residing with paternal relatives, as in the present case, will rarely receive benefits because the requirements of § 2515.05 (B) are much more difficult to meet.

Having looked at the impact of § 2515.05, we next consider whether the requirements of proof of familial relationships contained therein can also be found in part IV of the Social Security Act. If the federal laws do not require verification of a familial relationship as a condition for eligibility for benefits, then the DIM cannot impose such a condition itself. *King* v. *Smith,* supra.

Turning to the federal laws, we find that the Social Security Act and the health and human services regulations place the burden of proving paternity on the DIM, and not on the applicant. 42 U.S.C. § 602 (a) provides: "A state plan for aid and services to needy families with children must . . . (26) provide that, as a condition of eligibility for aid, each applicant or recipi-

ent will be required . . . (B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child, unless (in either case) such applicant or recipient is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary . . . ." In addition, each state AFDC plan under 42 U.S.C. § 602 (a) must provide that the state have in effect a IV-D program plan approved by the secretary of health and human services. 42 U.S.C. § 602 (a) (27). Each state IV-D program plan must "provide that such State will undertake—(A) in the case of a child born out of wedlock with respect to whom an assignment under section 602 (a) (26) . . . of this title is effective, to establish the paternity of such child, unless the agency administering the plan of the State under part A of this subchapter determines in accordance with the standards prescribed by the Secretary pursuant to section 602 (a) (26) (B) of this title that it is against the best interests of the child to do so . . . and (B) in the case of any child with respect to whom such assignment is effective, including an assignment with respect to a child on whose behalf a State agency is making foster care maintenance payments under part E of this subchapter, to secure support for such child from his parent (or from any other person legally liable for such support) . . . ." 42 U.S.C. § 654 (4).

The IV-D program places upon the state the duty to undertake to legally establish paternity once application for benefits is made. *Smith* v. *Puett,* 506 F. Sup. 134 (M.D. Tenn. 1980); 45 C.F.R. 302.31. Under 42 U.S.C. 602 (a) (26) (B), the caretaker and the child born out of wedlock must cooperate with state efforts to

determine paternity unless good cause is shown for refusing to cooperate. Even in a case where there is no good cause for refusing to cooperate, however, the only consequences are that the caretaker will be denied assistance and that the child will receive assistance in the form of protective payments that will be determined without regard to the needs of the caretaker. 45 C.F.R. 232.12 (d). A dependent child may not be denied AFDC benefits based on the caretaker's refusal to cooperate with the state's efforts to determine paternity. 42 U.S.C. § 606 (f); 45 C.F.R. 233.90 (b) (4). In the present case, the plaintiff cooperated with the DIM, but her cooperation is not at issue because she sought benefits only for the child and not for herself.

As the present case illustrates, § 2515.05 of the DIM policy manual excludes persons from the AFDC program who are eligible under federal law. The class of persons excluded by § 2515.05 is coextensive with the class excluded by the Tennessee regulation that was struck down in *Smith* v. *Puett,* supra.[3] We hold, therefore, that § 2515.05 is invalid as it violates the supremacy clause. *King* v. *Smith,* supra.

---

[3] The Tennessee regulation provides as follows: *"Evidence Regarding Relationship*

In order to receive AFDC for a child, it must be established that the applicant/grantee relative is within one of the specified degrees of relationship to the child. Documentary evidence of relationship is required except as specified in 9 below. The following sources of verification are listed in order of priority:

1. *Birth certificates or copies of birth certificates or BVS records* which establish relationship of the child to his parents; and in instances when applicant/grantee relative is other than the parent, which establish the relationship of the child's parents to the relative requesting AFDC for the child. Adoption and legitimation records also establish relationship of the child to his parent(s).

2. *Census Bureau Records* listing the children belonging to a particular family.

3. *Statements of physicians or midwives* who attended the births and remember the names of the people involved.

The DIM may not impose the burden of proving a familial relationship with a dependent child on the AFDC applicant. If an application for AFDC benefits contains on its face an allegation of familial relationship, that application must be approved, and the applicant's eligibility for benefits shall not be discontinued until such time as the DIM is able to show by a preponderance of the evidence that the alleged relationship does not exist in fact.

The defendant DIM contends that this court lacks subject matter jurisdiction in this appeal because the plaintiff did not exhaust her administrative remedies. According to the DIM, the plaintiff was required to petition the agency for a declaratory ruling as to the validity of § 2515.05 pursuant to General Statutes § 4-176 before she could appeal the denial of her application under General Statutes § 4-183. The opposite is true. "[A] party who has a statutory right of appeal from the decision of an administrative agency may not,

4. *Family Bible or other family records* which are written in ink and have not been altered, wills and deeds to property naming individuals and specifying relationships.

5. *Social Agency records* including those of DHS which are at least one year old and which consistently specify the degree of relationship of the applicant/grantee relative to the child.

6. *Juvenile Court, other Court and Hospital Records.*

7. *Insurance policies* at least one year old in which relationship of the child to the applicant/grantee relative is specified.

8. *Copies of income tax returns* listing the child as a specific relative, and school records which specify relationship.

9. In the *absence* of *any* documentary proof of relationship, the relative's statement as to the reason(s) there is no proof, plus his detailed statement as to how he is related to the child, plus at least one notarized statement from a person in a position to know the facts of the situation in which he describes the relationship and how he knows it to be true will be acceptable.

Copies of marriage and divorce records, legitimation records or legitimation records or statements from Court Clerks concerning marriages and divorces or legitimation will be required to establish relationship when the relationship is through the paternal line." Tennessee Public Assistance Manual § 2151; *Smith* v. *Puett,* 506 F. Sup. 134, 146–47 (M.D. Tenn. 1980).

instead of appealing, institute an independent action to litigate the very issue which the appeal is designed to test." *Butzgy* v. *Glastonbury,* 203 Conn. 109, 116, 523 A.2d 1258 (1987).

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.