**Deena JENKINS, Individually and on Behalf of Others Similarly Situated, Plaintiff,**

v.

**Charles M. PALMER, Director, Iowa Dept. of Human Resources, Defendant.**

No. C 92–2038.

United States District Court,
N.D. Iowa,
Eastern Division.

Oct. 13, 1994.

Linnea M. Nelson, Legal Services Corp. of Iowa, Sioux City, Iowa, Martin Ozga, Legal Services Corp. of Iowa, Des Moines, Iowa, for Plaintiff.

Barbara E.B. Galloway, Assistant Attorney General, Des Moines, Iowa, for Defendant.

## OPINION AND ORDER

MELLOY, Chief Judge.

This matter is before the court on cross motions for Summary Judgment. This order grants plaintiffs' motion for summary judgment and denies defendant's motion.

### Background

This action is brought pursuant to 42 U.S.C. § 1983 alleging an Iowa Administrative Rule violates the Social Security Act by computing Aid to Families with Dependant Children—Unemployed Parent (AFDC–UP) benefits on basis that excludes the needs of a biological father of a child where there is also a legal father and the biological father has not obtained a court order declaring his paternity.

The parties have stipulated to the following facts. Plaintiff became pregnant with her son, Jesse, while she was married to Michael Lossiah. The Iowa District Court dissolved the marriage of plaintiff and Michael Lossiah on October 4, 1989. During the divorce proceedings, the plaintiff informed the court she was pregnant by someone other than her husband, however, the Dissolution of Marriage Decree makes no mention of this fact.

Plaintiff's son, Jesse, was born on March 1, 1990 at which time Deena listed Jody Jenkins on the birth certificate as the father.[1] Deena and Jody were married on October 20, 1990. Jody Jenkins has always admitted paternity.

Deena, Jody and Jesse applied for benefits under the Aid to Families with Dependant Children–Unemployed Parent Program

(AFDC–UP). On May 1, 1991, the Iowa Department of Human Resources (DHS) approved the application. DHS initially paid Deena a three-member AFDC–UP grant for the months of May and June 1991. On May 29, 1991, DHS determined that, under Iowa law, Jody Jenkins was not Jesse's legal father and that Jody was therefore ineligible for benefits under AFDC–UP. DHS recalculated the grant and found that Deena and Jesse had been overpaid by $65.00 in both May and June, the amount paid in accordance with Jody's needs. Upon this determination, DHS established an AFDC–UP overpayment claim in the amount of $130 and have since collected this amount. DHS determined that Jody Jenkins could not be in the AFDC–UP eligible group unless and until he obtained a court order declaring his paternity.

The plaintiff contested the Department's overpayment claim by filing an administrative appeal on August 10, 1991. Shortly thereafter, on August 13, 1991, an Iowa District Court filed an order declaring Jody Jenkin's paternity of Jesse Jenkins. On September 30, 1991, an Administrative Law Judge reversed the DHS's establishment of the overpayment. However, on January 7, 1992, the Director of DHS issued a final decision overturning the ALJ's decision, stating that the "paternity of the biological father shall be established by the court before a father who is not the legal father of the child is added to the eligible group."

### I.

 Defendants first contest plaintiff's standing to bring this action. Defendants acknowledge that private actions can generally be brought pursuant to 42 U.S.C. § 1983 for violations of federal statutes, but argue that there is an exception to this rule which prohibits the plaintiff from bringing suit to enforce the Social Security Act. The parties dispute which part of the Act the plaintiff is asserting was violated by the defendant. The defendant asserts it is part IV–D and the plaintiff asserting she is bringing an ac-

---

[1]. Iowa law requires that where a child was conceived during a marriage, the name of the husband is to be placed on the birth certificate as the father unless paternity has been determined to be

otherwise by a court of competent jurisdiction. Iowa Code § 144.13(4) (1991). Jesse's birth certificate was not filled out in compliance with this law.

tion for the violation of part IV–A. However, the plaintiff has standing to bring suit for a violation of either section. *Howe v. Ellenbecker,* 8 F.3d 1258 (8th Cir.1993) (a private person may bring an action under § 1983 to enforce provisions of Title IV–D of the Act); *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (a private person may bring an action under § 1983 to enforce provisions of Title IV–A of the Act).

## II.

The Aid to Families With Dependant Children (AFDC) program was established by part IV of the Social Security Act, 42 U.S.C. § 601 *et seq.* Under the program, dependant children, defined as age qualified needy children deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent and who is living with a specified relative, were determined to be eligible for special funds. *King v. Smith,* 392 U.S. 309, 313, 88 S.Ct. 2128, 2131, 20 L.Ed.2d 1118 (1968); 42 U.S.C. § 606(a).

In 1961, the AFDC program was amended to allow two parent families to obtain benefits under the AFDC–Unemployed Parent (AFDC–UP) program. Under the Act, AFDC–UP benefits are to be provided to a "dependent child" who becomes a needy child due to the unemployment of the parent who is the principle wage earner. 42 U.S.C. § 607(a). The needs of both parents and the child are to be included in the AFDC–UP benefits received. 42 U.S.C. § 606(b)(1).

■■■ The states are not required to participate in the AFDC–UP program, but those that do must comply with the mandatory requirements of the Act and the regulations promulgated pursuant to the Act by the Department of Health, Education and Welfare at 45 C.F.R. Parts 200–282. Participating states are required to provide assistance to all persons who meet eligibility standards as defined in the Social Security Act unless Congress has clearly indicated that the standards are permissive. *Miller v. Youakim,* 440 U.S. 125, 133–34, 99 S.Ct. 957, 963–64, 59 L.Ed.2d 194 (1978); *Townsend v. Swank* 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971); *King v. Smith,* 392 U.S. 309, 88

S.Ct. 2128, 20 L.Ed.2d 1118 (1968). A state violates the Social Security Act when it adds an eligibility requirement not specifically authorized by the Social Security Act for the awarding of AFDC benefits to an otherwise eligible person. *Miller v. Youakim,* 440 U.S. at 133–34, 99 S.Ct. at 963–64. State regulations which violate the Act are invalid. *Id.*

The issue in this case is whether the state administrative rule adds an additional eligibility requirement not found in the Social Security Act. The plaintiff asserts that the state's requirement that Jody Jenkins have a court order establishing paternity is not a requirement of the federal system and therefore cannot be imposed upon her prior to her obtaining AFDC–UP benefits for all three family members.

In order to determine whether the state administrative rule adds an additional requirement the court must first determine the eligibility requirements under the Social Security Act. The AFDC program is designed to aid children in need who reside with certain family members. The program singles out the "dependent child" for welfare assistance and if the child is living with certain family members, the child and the family members may collect welfare assistance. 42 U.S.C. § 606(a) defines a "dependant child" as a needy child who:

> has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent....

42 U.S.C. § 607 expands that definition to include "a needy child ... who has been deprived of parental support or care by reason of the unemployment ... of the parent who is the principal earner...."

■■■ State plans implementing the AFDC program must provide that:

> The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan

includes such cases) the unemployment of his or her parent who is the principal earner will be made only in relation to the child's natural or adoptive parent.... 45 C.F.R. § 233.90. Therefore, state's are required to make the "natural" parent eligible for AFDC–UP payments.

In determining that Jody Jenkins was not eligible for AFDC–UP benefits, the state relied on 441 Iowa Administrative Rule 41.8(1)a.(2) which makes the following persons eligible for benefits: the dependant child, and

> any natural or adoptive parent of such child, if the parent is living in the same house as the dependent child. Paternity of the biological father shall be established by the court before a father who is not the legal father of the child is added to the eligible group.

The plaintiff argues that the state violates the Social Security Act when it requires a biological father to obtain a court order to prove paternity as this places an additional requirement on eligibility in violation of the Act. The state argues that it has complied with the federal requirements in that (1) Iowa's presumption of legitimacy law acts to make Michael Lossiah the "natural" parent, (2) the definition of "parent" under the Social Security Act is defined in accordance with state law and as the state administrative rule correctly reflects the state's definition of who is a parent, the rule is valid, and (3) even if a biological father, who is not the legal father is a "parent" within the Act, policy reasons dictate a court order establishing paternity should still be required.

### III.

The state first argues that Iowa's presumption of legitimacy makes Michael Lossiah the "natural" father of Jesse. Iowa's presumption of legitimacy law gives legitimacy to a child conceived during a marriage. Iowa Code § 598.31. Therefore, the state concludes, this presumption makes the husband at the time of conception the "natural" parent.

■ While the presumption of legitimacy rule makes the man who was the husband at the time his wife conceives a child, the "legal" father, common usage dictates that the phrase "natural father" be defined as biological father. Black's Law Dictionary states that where natural is used in opposition to legal, natural means:

> proceeding from or determined by physical causes or conditions, as distinguished from positive enactments of law, or attributable to the nature of man rather than to the commands of law, or based upon moral rather than legal considerations or sanctions.

*Black's Law Dictionary* 1026 (6th Ed.1990) This definition would require a finding that "natural" parent equates with "biological" parent, not the person deemed by Iowa's presumption of legitimacy law to be the legal parent. The state has not cited any authority from which this court could conclude that Congress meant anything other than the biological parent when it used "natural parent" within the Social Security Act.

■ The state next argues that state law determines the definition of "parent" and because the administrative rule correctly reflects the state definition, the state rule is valid. *King v. Smith,* 392 U.S. at 329, 88 S.Ct. at 2139, held that "parent," as used in the Act, equates to the person upon whom the state imposes a legal duty of support. Therefore, a state must make all persons, upon whom it imposes a legal duty of support, eligible for AFDC–UP benefits. The state attempts to argue that a man married to a woman when she conceives a child has the legal duty to support that child and therefore is the "parent" within the meaning of the Act. However, Iowa case law does not support this assertion.

■ In Iowa, a man has no legal duty to support a child simply because he is the legal father. *Gremillion ex rel. Gremillion v. Erenberg,* 402 N.W.2d 410, 413 (Iowa 1987). A man does not have a legal duty of support until there is a court finding that he is the actual father and the court orders support. *Id.;* and *see B. v. Holder,* 494 F.Supp. 814, 818 (M.D.Ala.1980) (Alabama's presumption of legitimacy of child born in wedlock does not establish husband's legal

duty of support unless he is in fact the father). The presumption of legitimacy makes it difficult for a man married to a child's mother at the time of conception to refute paternity, however, it is a rebuttable presumption. *Metallo v. Musengo,* 353 N.W.2d 872, 875 (Iowa Ct.App.1984).

 Further, once the biological father is adjudged by a court to be the father, the court may impose a retroactive legal duty of support. *Gremillion,* 402 N.W.2d at 413. Because the state can impose a retroactive duty of support on a biological father, biological fathers must be included in the state's definition of those eligible for AFDC benefits. *B. v. Holder,* 494 F.Supp. at 818. As the Iowa Administrative Rule excludes biological fathers who are not also legal fathers, the state's definition of "parent" does not comport with all those persons upon whom the state would impose a legal duty of support and therefore the rule does not comport with the Social Security Act, and is invalid.

Finally, the state argues that, even if a biological father who is not the legal father falls within the Act's definition of "parent," policy concerns dictate that a court order be required before the biological father can obtain AFDC–UP benefits. However, this argument fails as it is contrary to federal law to place the burden of proving a familial relationship upon the AFDC applicant. *Rivera v. Heintz,* 575 A.2d 1052, 1055 (Conn. App.1990).

Accordingly, **It Is Ordered:**

1. It is declared that the Defendant's policy of requiring putative fathers of children conceived while the mother was married to another man to obtain court orders to establish paternity for AFDC–UP eligibility purposes is invalid.

2. It is declared that no overpayment of benefits exists with respect to Deena Jenkins.

3. Defendant is enjoined from requiring AFDC–UP applicants to obtain court orders to establish paternity for AFDC–UP eligibility purposes where the applicant is a putative father of a child conceived while the mother was married to another man.

4. The defendant is to review its files and determine who the class members are who were either denied benefits or who received alleged overpayments of AFDC–UP because they failed to establish paternity of the putative father. The Defendant is to send notice to the named plaintiff and all class members informing them of their right to seek relief through administrative channels for AFDC–UP benefits that were wrongfully denied due to defendant's illegal policy.

5. Plaintiff is awarded costs and reasonable attorney fees in accordance with 42 U.S.C. § 1988.

Done and so ordered.